1  **Timothy J. Conway**, OSB No. 851752 (Lead Attorney)
   Direct Dial:  (503) 802-2027
2  Facsimile:    (503) 972-3727
   E-Mail:       tim.conway@tonkon.com
3  **Ava L. Schoen**, OSB No. 044072
   Direct Dial:  (503) 802-2143
4  Facsimile:    (503) 972-3843
   E-Mail:       ava.schoen@tonkon.com
5  **TONKON TORP LLP**
   1600 Pioneer Tower
6  888 S.W. Fifth Avenue
   Portland, OR  97204
7
        Attorneys for Debtor
8

9                UNITED STATES BANKRUPTCY COURT

10                      DISTRICT OF OREGON

11  In re                              Case No. 16-32311-pcm11

12  Peak Web LLC,                      **DEBTOR'S APPLICATION FOR
                                       ORDER TO EMPLOY SUSMAN
13                Debtor.              GODFREY LLP AS SPECIAL
                                       PURPOSE COUNSEL**

14

15          Peak Web LLC, debtor and debtor-in-possession ("Debtor"), moves this Court

16  for entry of an order approving the employment of Susman Godfrey LLP ("Susman

17  Godfrey") as special purpose counsel for Debtor.  Debtor makes this motion pursuant to

18  11 U.S.C. § 327(e) and Federal Rule of Bankruptcy Procedure 2014.  In support of this

19  Motion, Debtor incorporates the statements contained in the Declaration of Mark Calvert of

20  Cascade Capital Group in Support of Debtor's First Day Motions ("First Day Declaration")

21  filed contemporaneously herewith, and further respectfully states as follows.

22          1.      On June 13, 2016 (the "Petition Date"), Debtor filed a voluntary

23  petition for relief under Chapter 11 of Title 11 of the United States Code.

24          2.      Debtor has continued in possession of its property and is continuing to

25  operate and manage its business as debtor-in-possession pursuant to Sections 1107(a) and

26  1108 of Title 11 of the United States Code.

**Page 1 of 7** -  DEBTOR'S APPLICATION FOR ORDER TO EMPLOY SUSMAN GODFREY LLP
                    AS SPECIAL PURPOSE COUNSEL

3.     No request has been made for the appointment of a trustee or examiner, and no official committee of unsecured creditors has been appointed in Debtor's case.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

5.     Debtor is a managed-service company that provides the servers, storage, network, datacenter, and staff for some of the largest online businesses.  Debtor is essentially a "cloud" service provider for companies who do not want to build out an operations department to run all of these elements themselves.

6.     Debtor desires to retain and employ Susman Godfrey as special purpose counsel in this Chapter 11 case, pursuant to Section 327(e) of the Code, to provide representation in connection with all claims of Debtor against Machine Zone, Inc. and Epic War, LLC for damages arising from the claims pending in *Peak Web LLC v. Machine Zone, Inc., et al.*, No. 1-15-cv-288681 (Cal. Sup. Ct. Santa Clara Cty.), and any related actions, as well as the defense of claims asserted against Debtor in *Machine Zone, Inc. v. Peak Web, LLC*, No. 1-15-cv-288498 (Cal. Sup. Ct. Santa Clara Cty.) (all such claims, collectively, the "Machine Zone Litigation").

7.     The services to be performed by Susman Godfrey are necessary and in the best interests of Debtor and its estate, and dramatically impact potential recoveries to Debtor's creditors, as described below.

8.     Starting in 2013, a single customer, Machine Zone, grew Peak to $5 million in revenue per month over a 14-month period.  To support Machine Zone, Peak purchased over $35 million in hardware (approximately $25 million of which was guaranteed by Mr. Papen) and significantly increased its staff.  By 2015, Peak employed approximately 185 people and had data centers in three locations across the United States.

**Page 2 of 7** -  DEBTOR'S APPLICATION FOR ORDER TO EMPLOY SUSMAN GODFREY LLP
AS SPECIAL PURPOSE COUNSEL

9. Machine Zone is the developer of Game of War and Mobile Strike, mobile gaming apps that are played by millions of people around the world who talk, collaborate, and compete in an expansive virtual environment 24 hours a day, seven days a week, using their handheld devices. Although free to download, the game is designed to encourage players to make in-game purchases to gain power and more quickly advance through the game. Game of War was an instant success and is one of the top grossing mobile gaming apps, generating millions of dollars in revenue per day and $600 million annually. Machine Zone grew rapidly and had a purported valuation of $3 billion in 2014.

10. Debtor's network architecture is particularly valuable to Machine Zone because of Debtor's thousands of unique design choices, configurations, and command codes that improve Game of War's speed and reliability, both of which are critical to Game of War's success and profitability.

11. Pursuant to the parties' written non-disclosure and network hosting agreements, Machine Zone ran Game of War using Debtor's proprietary and trade secret network architecture. In exchange, Machine Zone agreed to pay Debtor monthly recurring charges of approximately $4.08 million through at least October 1, 2017. Machine Zone also agreed that if it terminated the agreement early for convenience, Machine Zone was required to pay the remaining recurring monthly payments through the full term of the agreement.

12. Shortly after the parties' executed an extended network hosting agreement in February 2015, Machine Zone induced Peak Hosting to allow Machine Zone to copy its trade secret network architecture by falsely representing that it was building a backup data center in Las Vegas to serve as a recovery source in the event of a disaster to Peak Hosting's primary data center in Dallas. All the while, Machine Zone repeatedly assured Peak that it was a gaming company and not an operations company, and that it had no interest in bringing the operations services Peak was providing in-house to Machine Zone. Accordingly, pursuant to Machine Zone's representations and the parties' written agreements,

**Page 3 of 7** - DEBTOR'S APPLICATION FOR ORDER TO EMPLOY SUSMAN GODFREY LLP
AS SPECIAL PURPOSE COUNSEL

1 Peak provided Machine Zone with its trade secret network topology, configurations,

2 command codes, and other confidential knowhow that Machine Zone copied to build an

3 identical network architecture in Machine Zone's Las Vegas data center.

4    13. On October 27, 2015, a previously unknown and undocumented Cisco

5 software bug caused a Cisco Nexus switch in Peak's network system to malfunction,

6 resulting in a Game of War outage that lasted a little over two hours. Cisco, a third-party

7 vendor, has repeatedly confirmed in writing that the initial outage, and subsequent outages in

8 November, were Cisco's fault and caused by the software bug ID CSCux02122 in its Nexus

9 switch. Cisco has since released a software patch to fix the bug. The Machine Zone/Peak

10 agreement expressly provides that: (a) Peak is not responsible for network outages caused by

11 vendor software bugs, and (b) a single outage is not grounds to terminate the agreement.

12 Nevertheless, on October 28, 2015, the day after the network outage, and without knowing

13 what caused the outage, Machine Zone used the single outage as an excuse to wrongfully

14 terminate the parties' agreement. Machine Zone terminated the agreement early and without

15 cause because it had already obtained and used Peak's trade secrets, confidential information,

16 and technical knowhow to duplicate Peak's network system and manage its network

17 operations in-house.

18    14. Machine Zone gave written notice of termination on October 29, 2015,

19 but demanded that Peak continue to operate Game of War through its Dallas data center until

20 December 27, 2015. This gave Machine Zone sufficient time to transfer Game of War to its

21 Las Vegas data center without incurring significant revenue loss by taking the game offline

22 for several weeks. Although Peak could have shut down Game of War's network operations

23 after being wrongfully terminated, costing Machine Zone tens of millions of dollars in lost

24 revenue, Peak continued to provide network hosting services in good faith until

25 December 27, 2015. In doing so, Peak incurred substantial overhead costs which otherwise

26 would not have been necessary. In return, Machine Zone concealed for months that it never

**Page 4 of 7** - DEBTOR'S APPLICATION FOR ORDER TO EMPLOY SUSMAN GODFREY LLP
     AS SPECIAL PURPOSE COUNSEL

1  intended to pay Peak the millions of dollars owed for October, November, or

2  December 2015.

3          15.     Machine Zone was 80% of Peak's business, and Peak relied on

4  Machine Zone's promise to pay the $4.08 million in monthly recurring network hosting

5  charges through the full term of the agreement.  By continuing to provide network hosting

6  services in good faith through December 27, 2015, Peak incurred substantial overhead costs

7  which otherwise would not have been necessary.  Machine Zone has still not paid for

8  services provided by Peak in October, November, or December 2015.  In addition to the

9  millions owed through December 27, 2015, the agreement provides that because Machine

10 Zone terminated the agreement for convenience, Machine Zone must pay Peak the full

11 $85.7 million owed for the remaining term of the agreement (January 1, 2016 through

12 October 1, 2017), for a total of $96.7 million in damages.  Further, although the agreement

13 requires Machine Zone to cease all use of Peak's trade secrets and confidential information

14 upon termination of the agreement, regardless of whether it was terminated for cause or

15 convenience, Machine Zone is continuing to use Peak's trade secrets and confidential

16 information without authorization.

17         16.     Debtor is informed that Steve Morrissey and Vineet Bhatia, the

18 attorneys at Susman Godfrey to be primarily involved in this representation, have read Local

19 Bankruptcy Rule 2016-1.

20         17.     Subject to Court approval, Debtor has agreed to compensate Susman

21 Godfrey on a contingent fee basis pursuant to and as more fully described in the terms and

22 conditions of its representation agreement with Debtor (the "Agreement"), a copy of which is

23 attached as Exhibit 1 to the proposed Order.  Although Susman Godfrey will be compensated

24 on a contingent fee basis, Susman Godfrey will nonetheless track its time because, under

25 certain circumstances, the value of Susman Godfrey's time may be used to compute the

26

TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

contingent fee.  Accordingly, the professionals who will be primarily responsible for providing services, their status, and their billing rates are as follows:

| Attorney Name | Status | Hourly Rate |
|---|---|---|
| Vineet Bhatia | Partner | $825 |
| Steve Morrissey | Partner | $700 |
| Kathy Hoek | Partner | $600 |
| Genevieve Vose | Partner | $550 |
| Oleg Elkhunovich | Associate | $450 |

18.     None of the Susman Godfrey professionals included in this engagement have varied their rate based on the geographic location of this bankruptcy case.

19.     Debtor believes Susman Godfrey's billing rates are at market rate.

20.     Debtor interviewed other firms to act as special purpose counsel for the purposes described herein, and concluded that Susman Godfrey was best suited for the engagement.

21.     Because the timing of the conclusion of the Machine Zone Litigation cannot be reasonably ascertained and may occur after confirmation of Debtor's Plan of Reorganization, Debtor requests that it be permitted to pay Susman Godfrey its contingent fee pursuant to the Agreement, without further notice or order of the Court, and that Susman Godfrey not be required to file any fee applications with the Court.

22.     Within the 12-month period preceding the Petition, Susman Godfrey did not provide legal services to Debtor.

23.     To the best of Debtor's knowledge, the partners and associates of Susman Godfrey do not have any connection with Debtor, its creditors, any other party-in-interest, or their respective attorneys or accountants, except as stated in the Rule 2014 Verified Statement of Proposed Professional.

24.     A proposed order authorizing employment of Susman Godfrey as special purpose counsel for debtor is attached as **Exhibit 1**.

**Page 6 of 7** -   DEBTOR'S APPLICATION FOR ORDER TO EMPLOY SUSMAN GODFREY LLP
                    AS SPECIAL PURPOSE COUNSEL

1    For the reasons stated in this Application, Debtor requests that the Court enter

2    an order authorizing it to employ Susman Godfrey to represent Debtor as its special purpose

3    counsel in this Chapter 11 case as of the date of the Application (but not to represent Debtor

4    in conducting its bankruptcy case), with compensation and reimbursement of expenses to be

5    paid on a contingent fee basis pursuant to the terms and conditions of the Agreement, without

6    further notice or order of the Court, and that Susman Godfrey not be required to file any fee

7    applications with the Court.

8            DATED this 13th day of June, 2016.

9                            TONKON TORP LLP

10

11            By /s/ Ava L. Schoen
                  Timothy J. Conway, OSB No. 851752
12                Ava L. Schoen, OSB No. 044072
                  Attorneys for Debtor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Page 7 of 7** -  DEBTOR'S APPLICATION FOR ORDER TO EMPLOY SUSMAN GODFREY LLP
                  AS SPECIAL PURPOSE COUNSEL

# MOTION EXHIBIT 1

**PROPOSED FORM OF ORDER**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

In re

Peak Web LLC,

Debtor.

Case No. 16-32311-pcm11

**ORDER GRANTING DEBTOR'S
APPLICATION FOR ORDER TO
EMPLOY SUSMAN GODFREY LLP AS
SPECIAL PURPOSE COUNSEL**

THIS MATTER having come before the Court upon Debtor's Application for

Order to Employ Susman Godfrey LLP as Special Purpose Counsel for Debtor (the

"Application") [ECF. No. _____]; the Court having reviewed the Application, the Rule 2014

Verified Statement for Proposed Professional; and the Court having found that (1) the Court has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (2) venue is proper in this

district pursuant to 28 U.S.C. §§ 1408 and 1409, (3) this is a core proceeding pursuant to

28 U.S.C. § 157(b), and (4) notice of the Application was sufficient under the circumstances;

and, after due deliberation, the Court having determined that the relief requested in the

Application is in the best interests of Debtor, its estate, and its creditors; and good and sufficient

cause having been shown;

**Page 1 of 2** - ORDER GRANTING DEBTOR'S APPLICATION FOR ORDER TO EMPLOY
SUSMAN GODFREY LLP AS SPECIAL PURPOSE COUNSEL

IT IS HEREBY ORDERED that:

1.        The Application is approved.

2.        Debtor is hereby authorized to retain and employ Susman Godfrey LLP as its special purpose counsel in the above Chapter 11 case as of the date of the Application to perform the services set forth in the Application, and is further authorized to pay Susman Godfrey LLP on a contingent fee basis pursuant to, and as more fully described in, the Agreement with Debtor, without further notice or order of the Court, and that Susman Godfrey LLP not be required to file any fee applications with the Court.

# # #

I certify that I have complied with the requirements of LBR 9021-1(a).

Presented by:

TONKON TORP LLP


By _____
     Timothy J. Conway, OSB No. 851752
     Ava L. Schoen, OSB No. 044072
     888 S.W. Fifth Avenue, Suite 1600
     Portland, OR 97204-2099
     Telephone:   503-221-1440
     Facsimile:   503-274-8779
     E-mail:      tim.conway@tonkon.com
                   ava.schoen@tonkon.com
     Attorneys for Debtor

cc:    List of Interested Parties

**Page 2 of 2** - ORDER GRANTING DEBTOR'S APPLICATION FOR ORDER TO EMPLOY
SUSMAN GODFREY LLP AS SPECIAL PURPOSE COUNSEL

**TONKON TORP** LLP
888 SW Fifth Avenue, Suite 1600
Portland, Oregon 97204
503-221-1440

Case 16-32311-pcm11   Doc 11   Filed 06/13/16

# ORDER
# EXHIBIT 1

**REPRESENTATION AGREEMENT**

# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

SUITE 3800

1201 THIRD AVENUE

SEATTLE, WASHINGTON 98101-3000

(206) 516-3880

FAX (206) 516-3883

WWW.SUSMANGODFREY.COM

| | | |
|---|---|---|
| SUITE 5100 | SUITE 950 | 32ND FLOOR |
| 1000 LOUISIANA STREET | 1901 AVENUE OF THE STARS | 1301 AVENUE OF THE AMERICAS |
| HOUSTON, TEXAS 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | NEW YORK, NEW YORK 10019-6022 |
| (713) 651-9366 | (310) 789-3100 | (212) 336-8330 |

STEPHEN E. MORRISSEY

DIRECT DIAL (206) 373-7380

E-MAIL SMORRISSEY@SUSMANGODFREY.COM

June 9, 2016

VIA E-MAIL (jeffrey@peakhosting.com)

Mr. Jeffrey Papen, CEO
Peak Web, LLC
19363 Willamette Dr.
Mailbox #498
West Linn, OR 97069

Re:    Peak Hosting, LLC v. Machine Zone, Inc. & Epic War, LLC

Dear Jeffrey:

This Agreement describes the terms and conditions of the relationship between you as client and us as lawyers. Susman Godfrey L.L.P. ("SG", "we", or "us") (which includes any successor to the partnership of SG) will represent Peak Web, LLC d/b/a Peak Hosting ("Client" or "you") in connection with all claims you have against Machine Zone, Inc. and Epic War, LLC for damages arising of the claims pending in *Peak Web LLC v. Machine Zone, Inc., et al.*, No. 1-15-cv-288681 (Cal. Sup. Ct. Santa Clara Cty.) and any related actions, as well as the defense of claims asserted against You in *Machine Zone, Inc. v. Peak Web, LLC*, No. 1-15-cv-288498 (Cal. Sup. Ct. Santa Clara Cty.) any related action (all such claims are collectively referred to as "Claims"). This Agreement controls the terms and conditions of our relationship regardless of whether Client has particular billing guidelines that may conflict with this Agreement. If this Agreement is acceptable to you, please sign and return an executed copy to me. We must receive an executed copy of this Agreement and any applicable cost deposit before we can begin this representation.

Exhibit 1
Page 1 of 15

## SCOPE OF ENGAGEMENT

Subject to the terms and conditions of this Agreement, we will represent Client on the Claims described above. Unless specifically requested by you and agreed to in writing by us, you agree that we do not represent you in any other legal matter. You also agree that we do not represent persons or entities related to Client such as corporate officers, parents, subsidiaries or affiliates unless a separate written engagement agreement exists setting forth the scope, terms and conditions of that separate representation.

## CLIENT'S DUTIES

To enable us effectively to represent you, you agree to be truthful and to cooperate with us, to disclose fully and accurately all facts relating to the Claims, to keep us informed of all developments, to abide by this Agreement, to pay our statements for services on time as set forth in this Agreement, to be reasonably available to attend meetings or court appearances, and to keep us advised of any change in address or telephone numbers.

## CLIENT'S PARTICIPATION

The ongoing full commitment to and participation by Your CEO, Jeffrey Papen, in the investigation and pursuit of the Claims is a critical condition to our acceptance of this representation on the contingent fee terms discussed below. Mr. Papen is the key witness in these matters, and the success of the matters will depend on his participation. In the event that Mr. Papen is for any reason no longer serving as Your CEO or otherwise able to fully devote his time to these matters we will, at our sole option, have a right to withdraw from the representation or to seek different compensation terms.

## CONTINGENT FEE

Our contingent fee will vary depending on when the matter is resolved, and the amount for which it is resolved. Generally, our contingent fee increases with the passage of time, the work required, and the result in the case. Our contingent fee will be calculated as follows: (1) for any recovery up to $20 million, the applicable contingent fee shall be 10% of the gross sum recovered; (2) for any recovery between $20 million and $50 million, the applicable contingent fee shall be 20% of the gross sum

Exhibit 1
Page 2 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

recovered; and (3) for any recoveries in excess of $50 million, the applicable contingent fee shall be 35%, *except* that the applicable contingent fee for any recovery in excess of $50 million shall increase to 40% of the gross sum recovered 30 days before the date set for trial. *Alternatively*, in the event of any recovery, SG shall, at its sole option, have the right to receive as a contingent fee a cash payment totaling a multiple of 2.5 times the value of its time invested in the case (as a multiple of each timekeeper's hourly rates times the time spent by each timekeeper on the matter), *provided* that the maximum contingent fee under this alternative shall be 29% of the gross sum recovered.

The term "gross sum recovered" means all money or other things of value, including the value of any business accommodation recovered by you, including any attorney's fees awarded by the court or arbitrator(s), without deducting any costs or expenses of litigation or any taxes (whether required to be withheld or otherwise). You authorize us to require that any settlement check be made payable jointly to you and us or, alternatively, that any payment be made by electronic transfer to our trust account. You also agree that you will endorse any such settlement check and will allow us to cash the same and make payment to you of your portion of the recovery from the proceeds or, in the case of an electronic transfer, from our trust account. The contingent fee percentages and other compensation terms set forth in this Agreement are not set by law but were negotiated between Client and SG.

## APPEAL

The scope of services to be performed by SG hereunder includes the obligation to prosecute any Appeal from a judgment or order which Client elects to pursue.

### FEDERAL TAX REPORTING REQUIREMENTS

Federal law requires that we keep a Form W-9, Request for Taxpayer Identification and Certification, on file to use to report earnings related to your cost deposit or settlement proceeds. Accordingly, please return to us a fully executed copy of the Form W-9 attached as Exhibit C. Also, attached as Exhibit D is our Form W-9. Please use it to report legal fees you pay to SG.

### NONCASH RECOVERY

If the Claims are settled in whole or in part by your receipt of anything of value other than cash, or if there is a judgment or award where the relief ordered consists as a whole or in part of anything of value other than cash (including an injunction), we shall be entitled to demand and receive, at our option: (a) payment for all time at normal hourly rates in effect at the time of settlement, judgment, or award; (b) payment in cash, under the preceding paragraph on Contingent Fee, of our applicable contingent percentage of (i) the present value of any noncash consideration plus (ii) any cash received upon settlement, judgment, or award; or (c) an undivided interest in any property received by you, equal to our applicable contingent percentage as identified in the preceding paragraph on Contingent Fee, plus payment of our applicable contingent percentage of any cash received as a result of settlement, judgment, or award.

### EXPENSES

Client agrees to pay all costs and expenses of litigation monthly. Charges for certain types of in-house expenses are contained in Exhibit A. Payment is due within thirty (30) days of your receipt of each bill from us.

When your case requires the services of a court reporter, experts, hotels or other outside vendors, you agree to contract with them directly and to inform them that they are to look to you, not us, for payment. If they nonetheless send us the bill, we will forward these bills to you for payment directly to the vendor. We are not responsible for paying invoices for you. Please be sure to pay vendors' bills promptly because slow payment may interfere with our ability to arrange for these necessary services on your behalf and late payment may subject you to additional charges.

We anticipate that your matter will involve the production of a very large volume of documents. It will be necessary to retain an outside electronic

Exhibit 1
Page 4 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

discovery vendor to manage the document database in this matter. Moreover, it may not be efficient for SG's attorneys to conduct the initial document review for such a large volume of documents. SG would require a larger fee in the event that its attorneys had to conduct the initial review of the volume of documents we anticipate will be produced. As a result, it may be necessary to retain the services of outside contract attorneys to review the documents. You agree that the cost of electronic discovery vendors and contract attorneys are costs and expenses of litigation which you will pay without any reduction of SG's fee.

### COST DEPOSIT

Client also agrees, upon execution of this Agreement, and as a condition to the representation, to pay to SG an initial cost deposit of at least $200,000 to cover certain necessary expenses of litigation, such as travel, expert witness fees, electronic document depository costs, telephone, messenger service and photocopying, that we may advance on Client's behalf, plus any attorney's fees Client may be required by this Agreement to pay. $50,000 of that amount shall be paid immediately, and $150,000 shall be paid within 30 days of execution of engagement. Payment of a cost deposit of this magnitude is necessary to ensure that we will receive prompt payment for the substantial litigation expenses that likely will be incurred during the months immediately following our engagement, and in light of the relatively short period remaining before the scheduled March 2017 trial date. We will place these funds in an interest-bearing trust account, and will apply them to expenses as incurred. The remaining cost deposit balance will be applied to our final statement for expenses, or, in our discretion, to a past due monthly expense statement. Client is obligated to maintain the cost deposit at its initial amount. Upon the termination of our services, we will promptly refund the balance, less payment of any fees or expenses unpaid as of the date of our final bill.

A.  Our agreement to provide legal representation in this matter is conditioned upon payment and maintenance of the requested cost deposit.

B.  We retain the discretion to request a supplemental cost deposit, over and above the cost deposit required prior to our commencement of the engagement, in the event of an increase in our anticipated expenses during the course of litigation, especially as trial or arbitration approaches. You agree to

Exhibit 1
Page 5 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

provide such a required supplemental cost deposit within thirty (30) days of our request.

## NONPAYMENT

By your execution of this Agreement, you agree that we are relieved from the responsibility of performing any further work should you fail to pay any monthly statement for expenses (including bills for expenses received from third parties), or for supplemental cost deposits, within thirty (30) days of receipt of such statements. In such event, you agree that we may move to withdraw as your counsel in any case where we have made an appearance on your behalf, and that you will promptly execute any withdrawal motions or other documents required to accomplish this. To the extent we exercise our right to withdraw because of nonpayment, you agree that we have the right to receive from you both the full value of our time (as measured by our hourly billing rates in effect at the time when the services were provided) and our unpaid expenses from any recovery you may receive in the future on the Claims. Upon withdrawal, we will cooperate with you in transferring the file to you or your other selected counsel, subject to the other terms of this Agreement. As an alternative to exercising our right to withdraw for nonpayment, you agree that we have the option to increase each of our contingent fee percentages by 10%.

## LIEN

To the extent permitted by applicable law, you hereby grant us a lien on any and all Claims. Our lien will be for any sums owing to us at the conclusion of our services for any attorney's fees and unreimbursed expenses we advanced or incurred on your behalf. The lien will attach to any recovery you obtain, whether by arbitration award, judgment, settlement or otherwise. You further agree that we have the right to notify defending parties and other, interested third parties of our lien and the right to enforce this lien through any valid mechanism.

## ESTIMATES

You understand that any estimates provided by us of the magnitude of the expenses that may be required at certain stages of any litigation are not precise, and that the kinds and amounts of expenses required are ultimately a function of many conditions over which we have little or no control, particularly the extent to which the opposition files pretrial motions and engages in its own discovery.

Exhibit 1
Page 6 of 15

Case 16-32311-pcm11     Doc 11     Filed 06/13/16

## OWNERSHIP OF THE CLAIMS

You hereby warrant that you are the sole owner of the Claims. You shall not assign or otherwise create any lien against the Claims subject to this Agreement.

## SETTLEMENT

Client shall have the sole right, at its discretion, to make the final decision with respect to whether to finalize, settle, or otherwise resolve any lawsuit. Notwithstanding the foregoing, Client agrees not to initiate, finalize, settle, or otherwise resolve any lawsuit regarding the Claims without consultation with SG. Client shall, immediately upon request by SG, provide SG a copy of any agreement settling or otherwise resolving the Claims.

## TERMINATING THIS REPRESENTATION

Subject to limitations on withdrawal imposed by an applicable code governing lawyer's conduct, we may withdraw from representing you for any reason recognized in such a code, including but not limited to any of the grounds described in this section. Subject to the terms of this Agreement, you may discharge us for any reason at any time.

    A.    Should you abandon any litigation asserting the Claims, should your conduct seriously prejudice the prospects of successful prosecution of such litigation (including, but not limited to, a change in your ownership or the filing of a bankruptcy proceeding involving you or your company, excluding the anticipated bankruptcy filing that has been disclosed, subject to approval of this fee agreement by the bankruptcy court), should your failure either to disclose material facts or accurately to describe such facts seriously prejudice the continued prosecution of such litigation, or should you materially breach this Agreement, then we shall have the right to withdraw from this representation. To the extent we exercise our right to withdraw under this paragraph A, you agree that we have the right to receive from you the full value of our time (as measured by our hourly billing rates in effect at the time when the services

were provided) and all unreimbursed expenses we advanced or incurred on your behalf.

B.   (1) You shall have the sole and exclusive right to accept or reject any offers for settlement of the Claims. In making that determination, you shall weigh fully our opinions concerning whether a settlement proposal represents a fair and reasonable basis for the disposition of the Claims.

(2) In an unusual situation, you may decide to withhold your consent to a settlement, notwithstanding our opinion that the settlement offer is the best offer likely to be received and that rejecting the settlement and risking a trial or similar proceeding would pose a substantial adverse risk to you of no recovery or a materially smaller recovery. In such circumstances, we have the right to withdraw from your representation, so long as time remaining before trial allows your retention of other counsel.

(3) To the extent we exercise our right to withdraw from this representation under this paragraph B, you agree that we have the right, at our option, to receive immediately from any recovery on the Claims you may receive following our withdrawal either (i) the full value of our time (as measured by our hourly billing rates in effect at the time when the services were provided) and all unreimbursed expenses we advanced or incurred on your behalf or (ii) the amount of our contingent fees and all unreimbursed expenses we advanced or incurred on your behalf as set out in the preceding paragraphs on Contingent Fee and Expenses and that we would have earned if you had accepted the recommended offer less only the reasonable portion of that fee that might be charged by your successor counsel as measured by the amount of work that such counsel reasonably expends in completing this matter and the relative amount of risk that your successor counsel necessarily assumed.

C.   Should it become our opinion at any time that your Claims lack merit (for example, because of inability to verify your claims through witnesses, because of adverse developments in the law or because of a materially adverse change in the financial condition of the defendant), then we shall have the option to withdraw from this representation and be relieved of any obligation to participate in any pending litigation involving the

Exhibit 1
Page 8 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

Claims. If that happens, you shall be liable only to us only for unreimbursed expenses we have advanced or incurred on your behalf, payable when and if you continue to pursue Claims and obtain a recovery sufficient to pay such expenses.

D.    In the event we file any motion to withdraw under paragraphs A-C above, you agree to execute all documents necessary to facilitate our withdrawal, such as documents necessary to obtain the court's approval of the withdrawal. Upon withdrawal, we will cooperate with you in transferring the file to you or your other selected counsel, subject to the other terms of this Agreement.

E.    You agree that, should you exercise your right to discharge us, we have, at our option, the right to receive immediately from any recovery on the Claims you may receive following our discharge either (i) the full value of our time (as measured by our hourly billing rates in effect at the time when the services were provided) and all unreimbursed expenses we advanced or incurred on your behalf or (ii) compensation in the amount of our contingent fees and all unreimbursed expenses we advanced or incurred on your behalf as set out in the preceding paragraphs on Contingent Fee and Expenses and that we would have earned if we had completed this matter, less only the reasonable portion of that fee that might be charged by your successor counsel as measured by the amount of work that such counsel reasonably expends in completing this matter and the relative amount of risk that your successor counsel necessarily assumed.

F.    To the extent we exercise our right to withdraw for any reason provided for in this Agreement or you exercise your right to discharge us, you agree that we have the right to secure any payment obligations owed to us under this Agreement through any valid mechanism including, where applicable, a lien on any future settlement, judgment, or other recovery, and the right to notify defending parties and your successor counsel of our lien. You specifically understand and agree that the amount that you may be required to pay successor counsel shall not (except as otherwise provided here) diminish or otherwise adversely affect our right to recover our fees and expenses as agreed to here.

G.  Our representation of you will be considered terminated at the earlier of (a) your termination of our representation, (b) our withdrawal from our representation of you, or (c) the substantial completion of our work for you. If no work has been performed by our attorneys on your behalf for a period of three consecutive months, unless we remain as your counsel of record in a pending proceeding, you agree that our attorney-client relationship will be terminated. Upon termination of our involvement in a particular matter for which we were engaged, we shall have no duty to inform you of any subsequent events, developments, or changes in law that could affect your rights and liabilities.

## ASSOCIATION OF COCOUNSEL

You understand that we may, at our expense, contract with other attorneys for the performance of certain work and that we may pay part of the fees we receive under this Agreement to such attorneys for the services rendered by them. In that event, we will seek your agreement to the engagement of such other attorneys and to the division of fees between us and them, and you agree that such consent will not be unreasonably withheld.

## EXCLUDED CLAIMS

Filing of litigation on your behalf may subject you to cross-claims, counterclaims, third-party claims and other such claims filed in the same or another action. You understand that this Agreement shall not cover the defense of any claims, counterclaims or cross-claims asserted against you in any litigation involving the Claims or in any other case. Should any such claims be filed against you, the parties hereto shall discuss and attempt to negotiate a separate or supplemental agreement concerning our representation of you with regard to those claims.

## YOUR INDEMNITY

You agree to indemnify and hold us harmless for and against any demands or claims asserted by others to any portion of the Claims subject to this Agreement.

Exhibit 1
Page 10 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

## CONSENT TO ADVERSE REPRESENTATION

You acknowledge that we are engaged in a nationwide practice involving clients in many industries and with extensive legal needs. By signing this letter, you agree that if we determine in the future that another one of our clients (whether a continuing client or a new one) requires our services in a matter other than one in which we represent you, we may undertake the representation, even if the representation is adverse to you or persons or entities related to you such as corporate officers, parents, subsidiaries or affiliates, so long as our representation of the other client involves a matter which is factually unrelated to the matter in which we have represented you. You agree that such a representation may involve both adverse litigation as well as non-litigation adverse representation, such as negotiating a transaction with you. We agree not to use any proprietary or other confidential information of a nonpublic nature concerning you acquired by us as a result of our representation of you to your material disadvantage in connection with any litigation or other matter in which we represent another client adverse to you. If you do not agree to consent to our representation of another client adverse to you, you may elect not to sign this letter and therefore not to retain SG as your counsel. You are free to retain any other counsel of your choosing.

## ETHICS COUNSEL

SG represents many clients and handles a great number of complex matters each year. In part because of the number of clients that SG represents and the complexity of the matters we become involved in, from time to time issues arise that raise questions as to our duties under the professional conduct rules that apply to lawyers. These might include, *e.g.*, conflict of interest issues, and could even include issues raised because of a dispute between us and a client over the handling of a matter. We believe that it is in our clients' interest, as well as SG's interest, that if legal ethics or related issues arise during a representation, we will receive expert analysis of our obligations. Therefore, when such questions arise, we sometimes seek the advice of outside ethics counsel or a partner at SG who is an expert on ethics matters ("ethics counsel"). You and we agree that the consultation of firm personnel with ethics counsel are attorney-client privileged communications. As a consequence, in the event of a dispute between you and SG, you may be unable to obtain discovery from SG concerning such communications. You and we agree that, in the event that firm personnel consult with ethics counsel regarding our

Exhibit 1
Page 11 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

representation of you, SG may continue to represent you and our continued representation of you shall not waive the attorney-client privilege over consultations between firm personnel and ethics counsel.

## DISPUTE RESOLUTION

In the unlikely event of a dispute arising out of, in connection with, or in relation to the interpretation, performance, or breach of this Agreement, there may be a risk of public disclosure of attorney-client privileged information or attorney work product if a lawsuit is filed in court. In order to avoid such a public disclosure, we encourage our clients to agree to binding arbitration of disputes arising out of, in connection with, or in relation to the interpretation, performance, or breach of their attorney fee agreements with SG. By signing this Agreement below, you accept binding arbitration.

Any dispute arising out of, in connection with, or in relation to the interpretation, performance or breach of this Agreement—including any claim of legal malpractice, breach of fiduciary duty or similar claim and any claim involving fees or expenses—shall be resolved by final and binding arbitration conducted in Seattle, Washington, administered by and in accordance with the then-existing JAMS Comprehensive Arbitration Rules and Procedures.

You and we agree that the state or federal courts in Seattle, Washington shall be the exclusive venue for any motion to confirm or vacate any arbitration award.

By so agreeing, you and we are waiving the right to a jury trial. You understand that arbitration provides only limited discovery and that courts will enforce an award in arbitration without reviewing it for errors of fact or law.

## NO GUARANTEES

You acknowledge that we have made no guarantees and given no assurances regarding the outcome of this matter. You understand that all expressions about the outcome are only opinions.

Exhibit 1
Page 12 of 15

Case 16-32311-pcm11     Doc 11     Filed 06/13/16

## CHOICE OF LAW

In any proceeding (whether in arbitration, in court or in any other tribunal), concerning the rights and obligations of you or us under this Agreement, all questions that are determined to be governed by the law of a state shall be resolved in accordance with the law of the State of Washington, including the then-prevailing Washington Rules of Professional Conduct. You acknowledge that selecting the law of Washington is reasonable in view of the location of our offices there, our status as a limited liability partnership under the laws of Washington, and application of the Washington Rules to many of the lawyers who may work on your matter.

## WORK PRODUCT

We typically maintain a file of documents during the representation. You and we agree not to waive any privilege that may apply to such materials, including the work product and attorney-client privilege, without your and our permission. You also agree that work product prepared for the internal use of our lawyers, such as drafts, notes, internal memos, emails, spreadsheets, and all legal and factual investigations, remains our property and that any right you have to obtain copies of the contents of our file shall not extend to such internal working papers. However, your employees may review such materials in our offices during the representation for the purpose of facilitating the representation. At the conclusion of our representation, you agree that all materials (electronic and hard copy) we have in the file received from any source may be handled and ultimately destroyed in accordance with our record retention policy then in effect.

## CLIENT INDEMNITY

You agree that any award of fees, costs expenses, or sanctions awarded against you as a result of court or arbitration order that are not solely the result of our conduct shall be payable solely by you and that you shall not look to SG to reimburse you for the amount awarded. This indemnity specifically includes, but is not limited to, any sanctions award or attorney's fees and costs awarded under Federal Rule of Civil Procedure 54 or any other statutory provision designed to shift fees or costs.

Exhibit 1
Page 13 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

## INTEGRATION

This Agreement represents the final and mutual understanding of the parties. It replaces and supersedes any prior agreements or understandings, whether written or oral. This Agreement may not be modified, amended, or replaced except by another signed written agreement.

## SEVERABILITY

If any part of this Agreement shall for any reason be found unenforceable, the parties agree that all other portions shall nevertheless remain valid and enforceable.

## CLIENT'S ACKNOWLEDGMENT

You acknowledge that we have encouraged you to consult independent counsel concerning the negotiation of this Agreement and its terms (including the sections on Dispute Resolution and Consent to Adverse Representation), that SG is not representing you in connection with the negotiation or execution of this Agreement, that you have made sufficient investigation and inquiry to determine that this Agreement is fair and reasonable to you, and that this Agreement was the product of arm's length negotiation with us. You warrant to us that you have either consulted such independent counsel or, having had an adequate opportunity to seek such advice, have declined to follow our advice that you do so.

We discuss the terms and conditions of our engagement so candidly because we believe that you are entitled to know our policies and that this type of frank discussion will avoid any misunderstandings later. Please sign a copy of this Agreement in the space provided below indicating your agreement to the terms and conditions set forth above. When we receive this Agreement signed by you and any applicable cost deposit, we will commence our representation in the above-described matter.

Exhibit 1
Page 14 of 15

Case 16-32311-pcm11    Doc 11    Filed 06/13/16

Mr. Jeffrey Papen, CEO
Peak Web, LLC
June 9, 2016
Page 15


Sincerely yours,

SUSMAN GODFREY L.L.P.

_____

Stephen E. Morrissey, Partner

Exhibits:
       Exhibit A – In-House Charges
       Exhibit B – Policy on Outside Vendors
       Exhibit C – Form W-9
       Exhibit D – Susman Godfrey Form W-9


cc:     Accounting

**AGREED TO AND ACCEPTED:**

Peak Web, LLC

By: _____

Name: _____ Jeffrey Papen

Title: _____ CEO

Date: _____ 6/10/16

EIN Number: _____
       (Please provide this number for bank use in establishing trust account)

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                       )

**Peak Web LLC**        )   Case No.   **3:16-bk-32311**

                       )

                       )   RULE 2014 VERIFIED STATEMENT

Debtor(s)          )   FOR PROPOSED PROFESSIONAL

                        **SUSMAN GODFREY LLP**

**Note:** To file an amended version of this statement per ¶19, file a fully completed amended Rule 2014 statement on LBF #1114 and clearly identify any changes from the previous filed version.

1. The applicant is not a creditor of the debtor except:

   **Applicant is not a creditor of the Debtor.**

2. The applicant is not an equity security holder of the debtor.

3. The applicant is not a relative of the individual debtor.

4. The applicant is not a relative of a general partner of the debtor (whether the debtor is an individual, corporation, or partnership).

5. The applicant is not a partnership in which the debtor (as an individual, corporation, or partnership) is a general partner.

6. The applicant is not a general partner of the debtor (whether debtor is an individual, corporation, or partnership).

7. The applicant is not a corporation of which the debtor is a director, officer, or person in control.

8. The applicant is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor.

9. The applicant is not a person in control of the debtor.

10. The applicant is not a relative of a director, officer or person in control of the debtor.

11. The applicant is not the managing agent of the debtor.

12. The applicant is not and was not an investment banker for any outstanding security of the debtor; has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor; and is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of such an investment banker.

13. The applicant has read 11 U.S.C. §101(14) and §327, and FRBP 2014(a); and the applicant's firm has no connections with the debtor(s), creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, or any District of Oregon Bankruptcy Judge, except as follows:

**See Exhibit 1.**

14. The applicant has no interest materially adverse to the interest of the estate or of any class of creditors or equity security holders.

15. Describe details of all payments made to you by either the debtor or a third party for any services rendered on the debtor's behalf within a year prior to filing of this case:
**In the twelve months preceding the filing of this Chapter 11 case, the applicant received a cost deposit of $50,000. The payment was received on June 10, 2016. The remaining $150,000 of the cost deposit is due within thirty days of June 10, 2016.**

16. The debtor has the following affiliates (as defined by 11 U.S.C. §101(2)).  Please list and explain the relationship between the debtor and the affiliate:
**Jeffrey E. Papen is the 80% owner of Debtor.  FWH Holdings, LLC is the 20% owner of Debtor.**

17. The applicant is not an affiliate of the debtor.

18. Assuming any affiliate of the debtor is the debtor for purposes of statements 4-13, the statements continue to be true except (list all circumstances under which proposed counsel or counsel's law firm has represented any affiliate during the past 18 months; any position other than legal counsel which proposed counsel holds in either the affiliate, including corporate officer, director, or employee; and any amount owed by the affiliate to proposed counsel or its law firm at the time of filing, and amounts paid within 18 months before filing):
**No exceptions.**

19. The applicant hereby acknowledges that he/she has a duty during the progress of the case to keep the court informed of any change in the statement of facts which appear in this verified statement. In the event that any such changes occur, the applicant immediately shall file with the court an amended verified statement on LBF #1114, with the caption reflecting that it is an amended Rule 2014 statement and any changes clearly identified.

THE FOLLOWING QUESTIONS NEED BE ANSWERED ONLY IF AFFILIATES HAVE BEEN LISTED IN STATEMENT 16.

20. List the name of any affiliate which has ever filed bankruptcy, the filing date, and court where filed:
**No affiliate has ever filed bankruptcy.**

21. List the names of any affiliates which have guaranteed debt of the debtor or whose debt the debtor has guaranteed. Also include the amount of the guarantee, the date of the guarantee, and whether any security interest was given to secure the guarantee. Only name those guarantees now outstanding or outstanding within the last 18 months:

**Applicant has been informed that the information provided in Tonkon Torp LLP's Rule 2014 Verified Statement for Proposed Professional is accurate and is incorporated herein.**

22. List the names of any affiliates which have a debtor-creditor relationship with the debtor. Also include the amount and date of the loan, the amount of any repayments on the loan and the security, if any. Only name those loans now outstanding or paid off within the last 18 months:

**None.**

23. List any security interest in any property granted by the debtor to secure any debts of any affiliate not covered in statements 20 and 21. List any security interest in any property granted by the affiliate to secure any debts of the debtor not covered in statements 21 and 22. Also include the collateral, the date and nature of the security interest, the name of the creditor to whom it was granted, and the current balance of the underlying debt:

**None.**

24. List the name of any affiliate who is potentially a "responsible party" for unpaid taxes of the debtor under 26 U.S.C. §6672:

**N/A**

I verify that the above statements are true to the extent of my present knowledge and belief.

_____
Applicant
**Stephen E. Morrissey, Partner**

1114 (11/30/09)     Page 3 of 3

EXHIBIT 1

Answer to No. 13.

Susman Godfrey represents the following creditor of Debtor in matters completely unrelated to this bankruptcy case: Winthrop Resources.

Susman Godfrey represents other clients in matters adverse to the following creditors of Debtor in matters completely unrelated to this bankruptcy case: Bank of America, AT&T Mobility, J.P. Morgan Chase, DirecTV, Comcast, PCM, Internal Revenue Service, Wells Fargo Bank National Association, Travelers Insurance Companies, and Verizon.