Douglas R. Pahl, OSB No. 950476
DPahl@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Telephone: 503.727.2000
Facsimile: 503.727.2222

Michael L. Bernstein (admitted *pro hac vice*)
michael.bernstein@apks.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
Telephone: 202.942.5000
Facsimile: 202.942.5999

Jeffrey C. Krause (admitted *pro hac vice*)
jkrause@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 S. Grand Ave.
Los Angeles, CA 90071-3197
Telephone: 213.229.7995
Facsimile: 213.229.6995

Attorneys for Machine Zone, Inc.

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Peak Web LLC,<br><br>               Debtor. | Case No. 16-32311-pcm11<br><br>MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO CLAIM AND ORDER AND NOTICE THEREON |

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

**TABLE OF CONTENTS**

<u>Page</u>

I. INTRODUCTORY STATEMENT ...................................................................................1

II. PROCEDURAL HISTORY ........................................................................................5

III. RESPONSE...............................................................................................................7

    A.    The Second Amended Claim Relates Back to the Original Claim and is Timely. ..................................................................................................................7

    B.    The Timeliness of Machine Zone's Proof of Claim Does Not Affect its Setoff Rights. ..................................................................................................................13

    C.    Machine Zone's Recoupment Rights Are Unaffected By The Claim Objection..........17

    D.    Machine Zone Can Prove Peak's Fraud to Defend Against Peak's Claims. ...............19

    E.    The Plan Requires Preservation of Machine Zone's Setoff Rights. ...........................20

IV. CONCLUSION.........................................................................................................20

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

**Cases**

*ASARCO, LLC v. Union Pac. R. Co.*,
  765 F.3d 999 (9th Cir. 2014) ..............................................................................4, 9

*Aureal. Triple B. Farms v. Haney Seed Co.*,
  1994 WL 463615 (9th Cir. Aug. 26, 1994)..............................................................17

*In re Aureal, Inc.*,
  279 B.R. 573 (Bankr. N.D. Cal. 2002) ...............................................13, 15, 16, 17

*In re B & L Oil Co.*,
  782 F.2d 155 (10th Cir. 1986) .................................................................................19

*In re Calore Exp. Co.*,
  288 F.3d 22 (1st Cir. 2002) .....................................................................................14

*Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis Entm't Grp., Inc.)*,
  963 F.2d 1269 (9th Cir. 1992) .................................................................14, 16, 17

*Clipper Express v. Rocky Mountain Motor Tariff Bureau*,
  690 F.2d 1240 (9th Cir. 1982) .................................................................................12

*Columbia Hosp. for Women Med. Ctr., Inc. v. NCRIC, Inc. (In re Columbia Hosp. for Women Med. Ctr., Inc.)*,
  461 B.R. 648 (Bankr. D.C. 2011) ...........................................................................15

*Davidovich v. Welton (In re Davidovich)*,
  901 F.2d 1533 (10th Cir. 1990) ...............................................................................15

*In re Davis*,
  2012 WL 3205431 (B.A.P. 9th Cir. Aug. 3, 2012), *aff'd*, 778 F.3d 809 (9th Cir. 2015) ..............14, 15

*FDIC v. Conner*,
  20 F.3d 1376 (5th Cir. 1994) ...................................................................................10

*Grady v. Easley*,
  45 Cal. App. 2d 632 (1941) .....................................................................................20

*Gray v. Upchurch*,
  2006 WL 3694604 (S.D. Miss. Dec. 13, 2006) ......................................................10

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

*Grumman Sys. Support Corp. v. Data Gen. Corp.*,
    125 F.R.D. 160 (N.D. Cal. 1988) ...................................................................18

*Hamlett v. Amsouth Bank (In re Hamlett)*,
    322 F.3d 342 (4th Cir. 2003) .......................................................................16

*In re Hanscom Retail Foods, Inc.*,
    96 B.R. 33 (Bankr. E.D. Pa. 1988) ..............................................................13

*In re Hausladen*,
    146 B.R. 557 (Bankr. D. Minn. 1992) ..........................................................17

*In re Hemingway Transp., Inc.*,
    954 F.2d 1 (1st Cir. 1992) ............................................................................13

*Horton v. Calvary Portfolio Servs., LLC*,
    301 F.R.D. 547 (S.D. Cal. 2014) .................................................................18

*HSBC Bank USA, N.A. v. Blendheim (In re Blendheim)*,
    803 F.3d 477 (9th Cir. 2015) .......................................................................16

*Klein v. London Star Ltd.*,
    26 F. Supp. 2d 689 (S.D.N.Y. 1998) ..........................................................19

*In re Kruszynski*,
    150 B.R. 209 (Bankr. N.D. Ill. 1993) ..........................................................10

*Lind v. Vanguard Offset Printers, Inc.*,
    857 F. Supp. 1060 (S.D.N.Y. 1994)............................................................10

*In re M. Silverman Laces, Inc.*,
    404 B.R. 345 (Bankr. S.D.N.Y. 2009) ........................................................15

*In re Madigan*,
    270 B.R. 749 (B.A.P. 9th Cir. 2001)............................................................18

*Martell v. Trilogy Ltd.*,
    872 F.2d 322 (9th Cir. 1989) .........................................................................9

*Moore v. N.Y. Cotton Exch.*,
    270 U.S. 593 (1926)....................................................................................18

*Mophie, Inc. v. ABM Wireless, Inc.*,
    2015 WL 12791373 (C.D. Cal. Sept. 3, 2015) ...........................................19

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11     Doc 801     Filed 09/08/17

*Nehrlich v. JLW-TW Corp.*,
   2016 WL 127584 (S.D. Cal. Jan. 11, 2016)...............................................................18

*Newbery Corp. v. Fireman's Fund Ins. Co.*,
   95 F.3d 1392 (9th Cir. 1996)...............................................................................14

*Oliner v. McBride's Industries, Inc.*,
   106 F.R.D. 9 (S.D.N.Y. 1985)...............................................................................11

*Pepperland, Inc. v. Westgate-Cal. Corp. (In re Westgate-Cal. Corp.)*,
   621 F.2d 983 (9th Cir. 1980)...............................................................................9

*In re Petersen*,
   437 B.R. 858 (D. Ariz. 2010)...............................................................................18

*In re Pinkstaff*,
   974 F.2d 113 (9th Cir. 1992)...............................................................................18

*Pioneer Inv. Servs. v. Brunswick Assocs.*,
   507 U.S. 380 (1993)...............................................................................16

*Pochiro v. Prudential Ins. Co. of Am.*,
   827 F.2d 1246 (9th Cir. 1987)...............................................................................18, 19

*Religious Tech. Ctr. v. Scott*,
   82 F.3d 423 (9th Cir. 1996)...............................................................................19

*In re Roberts Farms Inc.*,
   980 F.2d 1248 (9th Cir. 1992)...............................................................................8

*Santana v. Holiday Inns, Inc.*,
   686 F.2d 736 (9th Cir. 1982)...............................................................................10, 11

*In re Shelton*,
   735 F.3d 747 (8th Cir. 2013)...............................................................................16

*In re Smith*,
   437 B.R. 817 (Bankr. N.D. Tex. 2010)...............................................................................12

*In re Solari*,
   63 B.R. 115 (B.A.P. 9th Cir. 1986)...............................................................................9

*In re Tarnow*,
   749 F.2d 464 (7th Cir. 1984)...............................................................................16

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

*In re TLC Hosps., Inc.*,
    224 F.3d 1008 (9th Cir. 2000) ...........................................................................17, 18

*United States v. Arkison (In re Cascade Roads, Inc.)*,
    34 F.3d 756 (9th Cir. 1994) ..........................................................................................14

*United States v. Norton*,
    717 F.2d 767 (3d Cir. 1983) ..........................................................................................13

*In re Vitro Asset Corp.*,
    2012 WL 6021475 (Bankr. N.D. Tex. Dec. 4, 2012) ..................................................12

*In re White Motor Corp.*,
    59 B.R. 286 (Bankr. N.D. Ohio 1986) .........................................................................13

**Statutes**

11 U.S.C. § 553(a) ..............................................................................................................16

Bankruptcy Code, § 502(b)(9) ......................................................................................16, 17

Bankruptcy Code § 553 ................................................................................................14, 16

Bankruptcy Code § 1111 .....................................................................................................17

Bankruptcy Code § 1141 .....................................................................................................14

Bankruptcy Code § 1141(d)(1)(A) ......................................................................................14

Cal. Civ. Code § 1567 .........................................................................................................20

Cal. Civ. Proc. Code § 431.70 ............................................................................................15

Sherman Act .........................................................................................................................12

**Other Authorities**

140 Cong. Rec. H10752-01, 1994 WL 545773 (Oct. 4, 1994) ...........................................17

**Rules**

Bankruptcy Rule 3003(c)(2) ................................................................................................17

Ninth Circuit Rule 36-3 .......................................................................................................17

Fed. R. Civ. P. 15(c)(1) .........................................................................................................9

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

FRCP 13(a) ..................................................................................................................................18

FRCP 15(c) ...................................................................................................................................9

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

1     Machine Zone, Inc. ("**Machine Zone**") files this response (the "**Response**") to the *Objection to*

2 *Claim, and Order and Notice Thereon* [D.I. 731] (the "**Claim Objection**")[1] filed by Peak Web LLC (the

3 "**Debtor**" or "**Peak**").  For the reasons set forth herein, the Claim Objection should be denied.

4 **I. INTRODUCTORY STATEMENT**

5     From the outset of the action in the Superior Court (defined below), Machine Zone has alleged

6 that it was fraudulently induced to sign the 2015 Master Services Agreement ("**2015 MSA**") based on

7 Peak's lies about its web-hosting capabilities.  Machine Zone's fraud claims are scheduled to be tried to

8 a jury in February 2018.  Documents recently produced by Peak are devastating to Peak's prospects.

9 Based on recent discovery obtained in the Machine Zone Litigation (defined below), the evidence of

10 Peak's fraud is open-and-shut, and Peak has no credible defense.  For this reason, Peak now asks this

11 Court to divest the Superior Court of jurisdiction over some aspects of Machine Zone's fraud claims,

12 despite the fact that (i) the Claim Objection is barred by the law and facts, and (ii) the Superior Court

13 has already devoted enormous resources to the merits of Machine Zone's and Peak's claims.  The reason

14 for Peak's Claim Objection is clear:  to shield a jury from the damning evidence of Peak's and Papen's

15 fraud.  There is no valid basis for Peak's Claim Objection, which should be denied.

16     The fraud alleged by Machine Zone in its Original Complaint and the Third Amended Complaint

17 are part of the same overarching allegation—Peak committed fraud about its true capabilities as a web

18 host provider in order to win Machine Zone as a customer.  Machine Zone alleged in its Original

19 Complaint (incorporated into its Original Claim)[2] that Peak fraudulently induced Machine Zone to enter

20

[1] The Claim Objection was filed to Machine Zone's first amended Proof of Claim [Claim 48-2] (the
21 "**First Amended Claim**").  A copy of the First Amended Claim is attached to the Krause Declaration,
filed contemporaneously herewith, as Exhibit B.  A redacted copy of the First Amended Complaint is
22 Exhibit A to the Original Claim.  An unredacted copy of the First Amended Complaint is attached to the
Krause Declaration as Exhibit C.  Pursuant to this Court's ruling on August 17, 2017, Machine Zone
23 filed its second amended Proof of Claim [Claim 48-3] (the "**Second Amended Claim**") on August 30,
2017.  The Second Amended Claim incorporates the Third Amended Complaint (as defined below).
24 Machine Zone addresses the Claim Objection as a deemed objection to the Second Amended Claim.
Capitalized terms not otherwise defined herein shall have the meanings set forth in the Claim Objection.
25
[2] A copy of the Original Claim is attached to the Krause Declaration as Exhibit A.  The Original
26 Complaint is Exhibit A to the Original Claim.

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    into the 2015 MSA based on Peak's false "representations about its capabilities and expertise."  Original

2    Compl., ¶ 11. The Original Complaint also included allegations of Peak's negligent misrepresentations.

3    Citing the newly obtained evidence, Machine Zone's Third Amended Complaint (incorporated into

4    Machine Zone's Second Amended Claim)[3] alleges the same fraud as the Original Complaint, and adds

5    factual allegations that directly relate to (1) the falsity of the statements Machine Zone originally

6    alleged, (2) Peak's and Papen's knowledge of that falsity, and (3) Peak's and Papen's intent to defraud

7    Machine Zone.  Peak suffers no prejudice from being held to account for the full scope of an already

8    alleged fraud that ***Peak*** planned, executed, and intentionally concealed from Machine Zone.

9           As a result of the trove of documents recently produced by Peak in discovery, Machine Zone has

10   amended its complaint to paint a more detailed picture of Peak's and Papen's scheme to lure Machine

11   Zone into the 2015 MSA and prop up Peak's faltering business, and of Peak's inability to fulfill its

12   promises under the 2015 MSA.  Just before entering into business with Machine Zone, Peak was at

13   death's door.  Peak's documents reveal that before inducing Machine Zone to enter into the 2015 MSA,

14   Papen orchestrated a fraud on its bank by manipulating Peak's financial results and concealed the fact

15   that it had actually defaulted on a multi-million-dollar line of credit in September 2013.  Peak separately

16   generated a sham "invoice," which Papen admitted was just to "show revenue," allowing Peak to avoid

17   disclosing to its bank that it was in financial ruins and had violated key bank debt covenants.

18          Papen's illegal manipulation of Peak's financial books and records and the company's use of

19   what Papen called "tweaking" of Peak's financial data to avoid "tripping alarm bells" with the bank

20   were not isolated acts or unrelated to the original fraud.  To the contrary, they were instrumental in

21   carrying out the original fraud because they were undertaken to cover up Peak's poor performance and

22   lack of resources.  Peak's lack of resources relates directly to the original fraud claim, which is premised

23   at its core on Peak's inability to render premium services—as promised—under the 2015 MSA.  In

24   February 2015, for example, during negotiations of the 2015 MSA, Peak's president told Papen and

25

26   [3]  A copy of the Second Amended Claim is attached to the Krause Declaration as <u>Exhibit E</u>.  The Third
     Amended Complaint is Exhibit A to the Second Amended Claim.

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
              CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1　other high level Peak executives that he was worried the financial information Peak was sending to

2　Machine Zone would reveal Peak's "financial weakness just before MZ transitioned to Peak."  To win

3　Machine Zone's business, Peak removed the negative financial information from the data it sent to

4　Machine Zone, giving Machine Zone the false impression that Peak was a solid and stable company that

5　was capable of performing consistent with its assurances.

6　　　　Machine Zone also has discovered more evidence showing the falsity of Peak's representations

7　to Machine Zone about its expertise.  Internal Peak documents show that it suffered **_34_** outages between

8　September 2013 and September 2014, and that many of Peak's customers bitterly complained that Peak

9　had failed to deliver on its bloated promises.  To defraud Machine Zone regarding Peak's supposed

10　premium functionality, in a February 2014 email about one of Peak's many outages, Papen instructed

11　his employees, "**DO NOT SEND TO MACHINE ZONE**."

12　　　　This evidence—well known to Peak but new to Machine Zone—clearly relates back to the

13　original fraud claim; the new fact allegations simply add context to and support for Machine Zone's

14　claim in its Original Complaint that Peak fraudulently induced Machine Zone to enter into the 2015

15　MSA.  Machine Zone should not be penalized because it amended its complaint to add more facts

16　obtained in discovery evidencing Peak's fraud.  State and federal courts liberally allow amendments to

17　complaints, and in this case proofs of claim, for this very reason:  to allow an injured party to buttress its

18　claims as the litigation runs its course.  This is especially appropriate in fraud cases, where the defendant

19　is usually the sole party in possession of the evidence of its wrongdoing.

20　　　　The Superior Court, in fact, recently denied Peak's demurrer to a Machine Zone cause of action

21　for fraud in the Second Amended Complaint[4] in which Machine Zone alleged that it entered into the

22　2015 MSA due to fraudulent omissions by Peak in 2013 and 2014.  The court made clear that the

23　2015 MSA and Machine Zone's related damages were just the culmination of Peak's scheme that began

24　years earlier.  The end result—inducing Machine Zone to enter into the 2015 MSA through the

25

26　[4] A copy of the Second Amended Complaint is attached to the Krause Declaration as <u>Exhibit D</u>.

-3-　MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  defendants' false statements and intentional concealments—is just a more detailed factual background

2  for what Machine Zone alleged in its Original Complaint.  The fundamental relief that Peak seeks has

3  not changed—damages arising from having been misled into entering into the 2015 MSA and the right

4  to terminate the 2015 MSA.

5        To determine whether a claim "relates back" to an earlier complaint or claim, the Ninth Circuit

6  has held that, "[s]o long as a party is notified of litigation concerning a particular transaction or

7  occurrence . . . the defendant knows that the whole transaction described in it will be fully sifted, by

8  amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be

9  confined to their first statement."  *ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1006 (9th Cir.

10  2014) (quotations omitted).

11        That is exactly the case here.  Since the service of the Original Complaint, Peak has been on

12  clear notice that Machine Zone alleges that Peak fraudulently induced Machine Zone to enter into the

13  2015 MSA.  The 2015 MSA is the end result of Peak's fraudulent scheme, resulting from

14  misrepresentations about Peak's capabilities and qualifications, which are inextricably intertwined with

15  the fraudulent transaction alleged in Machine Zone's operative complaint.  Machine Zone's Third

16  Amended Complaint relates back to its Original Complaint, and Machine Zone's Second Amended

17  Claim should stand.

18        There are three other independently sufficient bases for the Court to deny the Claim Objection

19  unaffected by whether Machine Zone's claims relate back: (1) Machine Zone had the right to setoff its

20  claims against any claims the Debtor may have against Machine Zone; (2) Machine Zone's claims

21  against the Debtor arise out of the same transaction as the Debtor's alleged claims against Machine Zone

22  and, therefore, Machine Zone could assert its claims under the doctrine of recoupment; and (3) Machine

23  Zone's claims for fraud in the inducement, negligent misrepresentations, concealment and unfair trade

24  practices would constitute a complete defense to the Debtor's alleged claims.  Further, and importantly,

25  even if the Court were to cut off Machine Zone's fraud allegations and claims against Peak, it would

26  have little to no effect on judicial economy because Machine Zone would still prosecute its fraud

-4-    MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1     allegations against Papen, who is separately named in the claims Peak seeks to bar.

2            In short, the Claim Objection should be denied, and this Court should permit the parties to

3     litigate their claims and defenses in the Superior Court.  Peak cannot be permitted to use this Court to

4     create a completely uneven playing field and avoid judgment day in the Superior Court.  After the Bar

5     Date, Peak has supplemented its complaint in the Machine Zone Litigation with new claims, but now

6     asks this Court to use the Bar Date to limit Machine Zone's claims and defenses even though the new

7     facts discovered in the Machine Zone Litigation all relate to the same core issue—Peak's scheme to

8     induce Machine Zone to enter into the 2015 MSA.  Such a result would be a manifest abuse of the

9     bankruptcy process and clear error, and it would reward Peak's inexcusable forum shopping.

10    **II. PROCEDURAL HISTORY**

11           Machine Zone filed its Original Complaint against Peak in the California Superior Court, County

12    of Santa Clara (the "**Superior Court**") on November 25, 2015.  In the Original Complaint, Machine

13    Zone asserted, *inter alia*, that (1) it would never have entered into the 2015 MSA had the Debtor not

14    misled Machine Zone, (2) the Debtor breached the contract because it never had the ability to provide

15    Tier IV level services as promised, and (3) Machine Zone had the right to terminate the 2015 MSA.  On

16    December 3, 2015, Peak filed its own original complaint against Machine Zone and one of its affiliates,

17    Epic War LLC, alleging causes of action including misappropriation of trade secrets, breach of contract,

18    fraudulent inducement, and unfair competition.  The two actions were consolidated in January 2016

19    (collectively, the "**Machine Zone Litigation**").

20           Peak filed for bankruptcy protection on June 13, 2016.  This Court established October 13, 2016

21    as the deadline for creditors to file proofs of claim against the Debtor (the "**Bar Date**").  On October 7,

22    2016—one week in advance of the Bar Date—Machine Zone filed its Original Claim, which was based

23    on its then-operative Original Complaint.

24           Machine Zone removed the Machine Zone Litigation, but, at the Debtor's request, this Court

25    remanded the Machine Zone Litigation to the Superior Court on August 24, 2016.  After remand both

26    parties engaged in extensive discovery.

-5-     MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
        CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11     Doc 801     Filed 09/08/17

On December 28, 2016, after the Bar Date, **Peak** filed a Second Amended Complaint (the "**Peak Second Amended Complaint**"),[5] which added a new cause of action for breach of service orders, many of which had been issued under the parties' 2014 Master Services Agreement (the "**2014 MSA**"). Peak asserted that it became aware of these claims only because of documents produced in discovery.

On February 15, 2017, Machine Zone filed its First Amended Complaint in the Superior Court and on February 22, 2017 Machine Zone filed the Amended Claim incorporating the First Amended Complaint. Peak did not immediately object to the Amended Claim in this Court, even though it now contends that portions of that claim have always been time barred.

After Machine Zone filed the Amended Claim, Peak filed a demurrer to the First Amended Complaint in the Superior Court on March 21, 2017. Peak did not raise any statute of limitations defense or otherwise argue that Machine Zone's new causes of action had been filed too late. Machine Zone filed a Second Amended Complaint on June 8, 2017, and on July 17, 2017, Machine Zone filed a motion for leave to file its Third Amended Complaint. Peak filed a demurrer to the Second Amended Complaint on July 18, 2017, and opposed Machine Zone's motion for leave to file the Third Amended Complaint. Again, however, Peak did not make any argument in its extensive briefing before the Superior Court that Machine Zone's claims in its amended pleadings were in any way time barred or that they did not relate back to the Original Complaint. In other words, until only recently, Peak has consistently determined to litigate the merits of Machine Zone's claims ahead of any timeliness issues.

On August 11, 2017, the Superior Court held a hearing on both Peak's demurrer to the Second Amended Complaint and Machine Zone's motion to amend and on August 18, 2017 it entered its order on those motions (the "**Order Denying Demurrer**").[6] The court ordered that substantially all of Machine Zone's causes of action against Peak, Papen, and Fred Hsu, including claims that they mislead Machine Zone into entering into the 2015 MSA, will proceed in the Superior Court. On August 25,

---

[5] A copy of the Peak Second Amended Complaint is attached to the Krause Declaration as <u>Exhibit F</u>.

[6] Copies of the Order Denying Demurrer and the transcript from the Superior Court's hearing on Peak's demurrer to Machine Zone's Second Amended Complaint and motion to file the Third Amended Complaint are attached to the Krause Declaration as <u>Exhibits G and H</u>, respectively.

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  2017, Machine Zone filed a third amended complaint (the "**Third Amended Complaint**") to conform

2  its complaint to the Order Denying Demurrer.

3  Throughout the period from February 15, 2017, when Machine Zone filed the First Amended

4  Complaint, to June 29, 2017, when Peak filed the Claim Objection, the parties continued to litigate in

5  the Superior Court, as this Court compelled them to do when it entered its remand order.  After the filing

6  of the First Amended Complaint and before the Debtor filed the Claim Objection both parties engaged in

7  extensive discovery, spending thousands of hours and millions of dollars litigating the merits in the

8  Superior Court.  Machine Zone's discovery unearthed extensive evidence of Peak's fraud,

9  misrepresentations, concealment and unfair trade practices.  The Claim Objection, which was first filed

10  only after evidence of Peak's fraud was uncovered, seeks to evade addressing the merits of Machine

11  Zone's claims by asserting that they are time barred.  As discussed below, this contention is unfounded.

12  **III.  RESPONSE**

13  **A.**      **The Second Amended Claim Relates Back to the Original Claim and is Timely.**

14  From the outset of the Machine Zone Litigation, Machine Zone has made it clear that Peak

15  defrauded Machine Zone to enter into the 2015 MSA.  Machine Zone's Original Complaint alleged a

16  claim for fraudulent inducement and a claim for negligent misrepresentation.  The Original Complaint

17  specifically alleged that Peak lied to Machine Zone about Peak's web-hosting capabilities and expertise.

18  The Original Complaint further alleged that Peak falsely assured Machine Zone "time and again" that

19  Peak was positioned to deliver uninterrupted network availability "from a hardware, infrastructure,

20  personnel, processes and operational perspective."  Original Compl., ¶ 54.  At that time, however, Peak

21  had not produced tens of thousands of documents that revealed the extent to which Peak was nowhere

22  near able to deliver on its promises when it falsely lured Machine Zone into entering the 2015 MSA.

23  Machine Zone's Second Amended Claim incorporates the allegations in its Third Amended

24  Complaint, which also alleges a claim for fraudulent inducement as to the 2015 MSA.  Machine Zone's

25  other claims in the Third Amended Complaint—including claims for fraudulent concealment, negligent

26  misrepresentations, false advertising, and unfair competition—all allege that Peak used knowingly false

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1   statements and material omissions to cause Machine Zone to enter into the 2015 MSA.  The formation

2   of the 2015 MSA thus remains the transaction at issue; all that has changed is that Machine Zone has

3   supplemented its allegations with what it now knows about the depth of Peak's operational and financial

4   problems, which contributed to its longstanding duplicity toward Machine Zone.

5       Peak's internal documents reveal that Peak knew it could not deliver on its promises "from a

6   hardware, infrastructure, personnel, processes and operational perspective" in part because Peak had

7   grossly inadequate financial resources to meet its obligations and insufficient expertise to do so.  Peak's

8   representations to Machine Zone about its ability to deliver on its operational promises were belied by

9   Peak's dozens of failures with other customers, which Peak intentionally hid from Machine Zone.  More

10  generally, Machine Zone learned that Peak knew it was losing money, potentially losing a key investor,

11  and at risk of losing its credit line when Peak devised a scheme to defraud its bank—and then Machine

12  Zone—about Peak's financial stability.

13      None of this is news to Peak.  Peak and Papen were the architects of their own scheme to mislead

14  Machine Zone.  Thus, they suffer no prejudice from the Third Amended Complaint, which includes

15  additional detail of the scheme they consciously hid from Machine Zone.  While shocking (and

16  potentially criminal), Peak's conduct as reflected in Machine Zone's Third Amended Complaint merely

17  supports the core fraud alleged all along.  Peak lied to Machine Zone in order to induce it to enter into

18  the 2015 MSA.  Because all of Machine Zone's claims relate to this same core transaction, occurrence,

19  and conduct, Machine Zone is entitled to submit additional facts obtained through discovery in the

20  Superior Court litigation to support its claims and to assert additional legal theories of recovery.

21      The Ninth Circuit has a "long established liberal policy that permits amendments to a proof of

22  claim." *In re Roberts Farms Inc.*, 980 F.2d 1248, 1251 (9th Cir. 1992).  Courts in the Ninth Circuit

23  apply the relation back principles set forth in Federal Rule of Civil Procedure ("<u>FRCP</u>") 15(c) for

24  purposes of determining whether an amendment to a timely-filed proof of claim is truly an amendment,

25  or whether the amendment is really just a new proof of claim.  *E.g.*, *In re Solari*, 63 B.R. 115, 117

26  (B.A.P. 9th Cir. 1986) (citing *Pepperland, Inc. v. Westgate-Cal. Corp. (In re Westgate-Cal. Corp.)*, 621

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  F.2d 983 (9th Cir. 1980)).  FRCP 15(c) provides that an amended pleading relates back to the original if

2  it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or

3  attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1).

4       The Ninth Circuit has recently reemphasized that the FRCP 15(c) standard is to be "liberally

5  applied" in favor of allowing amended pleadings to relate back, especially where "no disadvantage will

6  accrue to the opposing party."  *ASARCO*, 765 F.3d at 1005 (citation omitted).  The purpose of FRCP

7  15(c) is to "provide maximum opportunity for each claim to be decided on its merits."  *Id.*  This is

8  precisely what Peak is seeking to avoid; resolution of claims arising from its fraud on the merits.  In this

9  case, Machine Zone's subsequently added causes of action relate back to its Original Claim, because the

10  Original Claim put Peak on notice prior to the Bar Date that its fraudulent conduct and negligent

11  misrepresentations in connection with the negotiation of the 2015 MSA were at issue.

12       The relation back inquiry under FRCP 15(c) asks "whether the original and amended pleadings

13  share a common core of operative facts so that the adverse party has fair notice of the transaction,

14  occurrence, or conduct called into question."  *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325 (9th Cir. 1989).

15  As the *ASARCO* court summarized, "[s]o long as a party is notified of litigation concerning a particular

16  transaction or occurrence . . . the defendant knows that the whole transaction described in it will be fully

17  sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on

18  will not be confined to their first statement."  765 F.3d at 1005–07 (holding that an amended pleading

19  related back even where new allegations were expressly disclaimed in the original pleading) (quotation

20  omitted).  The Ninth Circuit made clear that "[p]arties should not be discouraged from limiting their

21  initial pleadings to claims and defenses that have evidentiary support.  Nor should they fear that doing so

22  will foreclose them from amending their pleadings if new facts come to light after further investigation

23  and discovery."  *Id.* at 1006.

24       Consistent with this principle, the Ninth Circuit has held that where evidence supporting an

25  amended claim "could have been introduced" in support of an originally pleaded claim, the amended

26  pleading relates back to the original.  *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir. 1982);

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1   *see also In re Kruszynski*, 150 B.R. 209, 212 (Bankr. N.D. Ill. 1993) ("The basic test for relation back is

2   whether the evidence with respect to the second set of allegations could have been introduced under the

3   original complaint, liberally construed.") (citations omitted).

4          Addition of new facts does not preclude relation back, so long as they relate to the same

5   transaction, occurrence **_or_** conduct. *See FDIC v. Conner*, 20 F.3d 1376, 1386 (5th Cir. 1994) (amended

6   complaint adding claims relating to additional loan transactions related back because they represented

7   "additional sources of damages that were caused by the same pattern of conduct identified in the original

8   complaint"). Nor does the addition of "legal theor[ies]" for recovery based on the same transaction,

9   occurrence **_or_** conduct preclude relation back. *Santana*, 686 F.2d at 738–39. Thus, where an amended

10  complaint "incorporates additional omissions and misrepresentations concerning the nature of the"

11  agreement at issue in the original complaint, new allegations or theories of fraud relate back. *E.g.*, *Lind*

12  *v. Vanguard Offset Printers, Inc.*, 857 F. Supp. 1060, 1068–69 (S.D.N.Y. 1994); *Gray v. Upchurch*,

13  2006 WL 3694604, at *3–4 (S.D. Miss. Dec. 13, 2006) (a second amended complaint that "further

14  develop[s] the factual underpinnings of . . . fraud claims" and asserts a new legal theory relates back).

15         Machine Zone's Original Claim plainly alerted Peak that Peak's misrepresentations and

16  concealment of key facts that mislead Machine Zone into entering into the 2015 MSA would be

17  addressed in the Machine Zone Litigation. The Debtor attempts to artificially limit the scope of the

18  Original Claim, arguing that it was based only on "allegations stemming from the '100% uptime'

19  promise.'" Claim Objection, ¶ 25. This is wrong for two reasons. First, other misrepresentations

20  supporting a fraudulent inducement claim would still relate to the same transaction even if the Original

21  Complaint only alleged misrepresentations as to the 100% uptime promise. Second, the Original

22  Complaint listed an array of false representations by Peak, including that Peak employed "industry

23  standard best practices for Tier IV data centers," that Peak could provide full monitoring capabilities at

24  its Dallas data center, and that it had a qualified and competent staff. Original Complaint, ¶ 54.

25  Above all, the Original Complaint alleged that Peak made false and fraudulent representations "that it

26  was capable of providing the level of service required by Machine Zone." *Id.*

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1     The challenged allegations in Machine Zone's Third Amended Complaint show why Peak's

2     representations were false and fraudulent.  Peak's hidden performance failures with other customers, its

3     hidden lack of qualified human capital, and its hidden financial problems (magnified by Papen bleeding

4     the company dry to buy three houses in one month, for example), all show that Papen knew his company

5     could not handle Machine Zone's needs.  They explain why he lied—he knew Machine Zone would not

6     have entered into the 2015 MSA with Peak if Machine Zone had known that Peak's outraged customers

7     suffered dozens of outages.  Papen also knew that Machine Zone would not have continued to do

8     business with Peak if it knew that Peak was breathing its dying breaths before entering into business

9     with Machine Zone, and then depended on Machine Zone to stay alive.  <u>That is why Peak and Papen</u>

10    <u>conspired to hide that information from Machine Zone</u>.  The incriminating evidence that Peak has

11    produced simply provides additional details to support Machine Zone's original fraud claims.  The core

12    lie—that Peak was capable of delivering on its promises—remains the same.  Machine Zone's Original

13    Complaint gave Peak ample notice that Machine Zone sought relief from the full scope of Peak's

14    fraudulent representations and concealment of key facts.  *See, e.g.*, *Oliner v. McBride's Industries, Inc*.,

15    106 F.R.D. 9, 13 (S.D.N.Y. 1985) (claim for diversion of tangible assets related back to claim for

16    diversion of intangible assets because it was a "a natural offshoot of the basic scheme to divert assets

17    which was set forth in the first amended complaint").[7]

18         The Superior Court has already rejected Peak's efforts to dismiss a Machine Zone claim against

19    Peak for fraudulent concealment, expressly recognizing that Machine Zone's amended complaint

20    alleged that Peak's misconduct in 2013 and 2014 caused Machine Zone to "enter[] into the 2015 MSA."

21    Order Denying Demurrer, p 16.  *See also* Hr'g Tr. 8/11/17, No. 15-cv-288498, p. 27:18-23 (Cal. Sup.

---

22    [7]  The Debtor's argument that the false advertising and unfair competition ("**UCL**") claims added to the
23    Third Amended Complaint do not relate back is also groundless.  The specific factual allegations
      supporting Machine Zone's false advertising and UCL claims consist of false statements, misleading
24    marketing materials, and material omissions that caused Machine Zone to contract with Peak.  Machine
      Zone relied on these misrepresentations in signing the 2015 MSA.  The same evidence that supports
25    Machine Zone's false advertising and UCL claims therefore supports its original claim for fraudulent
      inducement, and could have been offered in support of Machine Zone's Original Complaint.  Under
26    *Santana*, these claims therefore relate back to the Original Complaint.  *See Santana*, 686 F.2d at 738–39.

-11-          MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
              CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11     Doc 801     Filed 09/08/17

1  Ct.) (finding that Peak's misrepresentations in 2013 and 2014 allegedly caused damage to Machine

2  Zone, with "those frauds culminat[ing]" in Machine Zone "signing the 2015" MSA).  In other words, the

3  Superior Court has already concluded that evidence of Peak's 2013 and 2014 fraud can be used to

4  support Machine Zone's fraudulent inducement cause of action in the Original Complaint relating to the

5  2015 MSA.  This straightforward conclusion—that evidence of material false statements and omissions

6  preceding the 2015 MSA may be used to show that Peak fraudulently caused Machine Zone to enter into

7  the 2015 MSA likewise compel denial of the Claim Objection here.[8]

8      Peak argues that Machine Zone's amended proof of claim does not relate back because it seeks

9  an "11-fold increase" in damages as compared to the Original Claim.  Claim Objection, ¶¶ 14, 26.  This

10  argument conveniently ignores that Machine Zone's Original Claim sought both (1) compensatory

11  damages of at least $23,000,000, and (2) additional damages "more fully set forth in the Complaint,"

12  which specifically included "punitive damages in an amount to be determined at trial."  Original Claim,

13  ¶ 9; Original Complaint, ¶ C.  The Third Amended Complaint (and the Second Amended Claim, by

14  extension) simply places a minimum estimated dollar figure on the punitive damages.  Peak has thus

15  been on notice from the time of Machine Zone's Original Claim that Machine Zone intended to seek

16  punitive damages, and is not prejudiced by the fact that the Third Amended Complaint estimates an

17  amount for those damages.  *Cf. Clipper Express v. Rocky Mountain Motor Tariff Bureau*, 690 F.2d 1240,

18  1259 n. 29 (9th Cir. 1982) (amendment seeking treble damages for fraud under the Sherman Act

19  permitted where plaintiff's original complaint alleged antitrust violations).  Moreover, an increase in the

20  damages sought would not prevent a claim from relating back.  *E.g.*, *In re Hemingway Transp., Inc.*, 954

21  F.2d 1, 10 (1st Cir. 1992) ("[A]s a general rule, amendments intended *merely* to increase the amount of a

22  claim grounded in the same *right to payment* are not considered 'new' claims under the Code.") (citing

23

24  [8]  Deference to this finding by the Superior Court is appropriate in light of that court's familiarity with the issues and because the Superior Court will be the ultimate trial court.  *See, e.g., In re Smith*, 437 B.R.

25  817, 824 (Bankr. N.D. Tex. 2010) (noting that "[i]n reviewing an alleged debtor's defenses to the entry of an order for relief, this Court is required to give attention and deference to the findings of other

26  forums"); *In re Vitro Asset Corp.*, 2012 WL 6021475, at *6 (Bankr. N.D. Tex. Dec. 4, 2012).

-12-     MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
          CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11     Doc 801     Filed 09/08/17

1  *In re Hanscom Retail Foods, Inc.*, 96 B.R. 33, 35 (Bankr. E.D. Pa. 1988); *In re White Motor Corp.*, 59

2  B.R. 286, 288 (Bankr. N.D. Ohio 1986)).

3         Finally, the Debtor's argument that Machine Zone "has no excuse for not asserting its new

4  claims and allegations timely before the Bar Date," is contradicted by the fact that Peak itself amended

5  its own claims against Machine Zone after the Bar Date, contending that it only "became clear that Peak

6  has strong claims against MZ for over $100 million" after "limited pre-mediation discovery."  Claim

7  Objection, ¶¶ 29, 31.  The parties did not exchange "limited pre-mediation discovery" until early

8  November 2016—after the October 13, 2016 Bar Date.  Peak asserts that it learned of its alleged claims

9  as the result of this exchange, but contends that Machine Zone could not possibly have learned of

10  additional facts supporting its claims based on the same exchange.  Machine Zone's Original Complaint

11  contained the allegations that put the Debtor on notice that any additional, related fraudulent conduct

12  could form the basis of subsequent amended pleadings.  Extensive discovery since then has revealed that

13  Peak's conduct in furtherance of the original fraud extended far beyond what Machine Zone knew

14  before the Bar Date, and in fact spanned the entire duration of its relationship with Machine Zone.

15         **B.      The Timeliness of Machine Zone's Proof of Claim Does Not Affect its Setoff Rights.**

16         Even if any new claims in the Second Amended Claim did not relate back, such claims would

17  only be disallowed for distribution purposes and Machine Zone would have the absolute right to prove

18  exactly the same facts to establish a setoff right.  This conclusion is required under the clear majority of

19  decisions addressing this issue, and is required under Ninth Circuit precedent.  To the extent that *In re*

20  *Aureal, Inc.*, 279 B.R. 573 (Bankr. N.D. Cal. 2002), which Peak cited to this Court, is to the contrary, it

21  is simply wrong.

22         The Ninth Circuit has consistently recognized that Bankruptcy Code section 553 "is not an

23  independent source of law governing setoff; [rather] it is generally understood as a legislative attempt to

24  preserve the common-law right of setoff arising out of non-bankruptcy law."  *United States v. Arkison*

25  *(In re Cascade Roads, Inc.)*, 34 F.3d 756, 763 (9th Cir. 1994) (quoting *United States v. Norton*, 717 F.2d

26  767, 772 (3d Cir. 1983)); *accord Carolco Television Inc. v. Nat'l Broadcasting Co. (In re De Laurentiis*

-13-    MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
        CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

1     *Entm't Grp., Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1992) ("Section 553 does not by itself create a right of

2     setoff.  Instead, it merely allows setoffs in bankruptcy to the same extent they are allowed under state

3     law."); *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996).

4          A creditor's right to setoff is subject only to "limited" and "enumerated" exceptions, such as the

5     "automatic stay, so that a creditor may not exercise a prepetition right of setoff during bankruptcy

6     proceedings without first obtaining the permission of the court."  *In re Calore Exp. Co.*, 288 F.3d 22,

7     39–40 (1st Cir. 2002); *In re De Laurentiis Entm't Grp., Inc.*, 963 F.2d at 1277.  In fact, the Ninth Circuit

8     has recognized that "setoffs in bankruptcy have been 'generally favored,' and a presumption in favor of

9     their enforcement exists."  *In re De Laurentiis Entm't Grp., Inc.¸* 963 F.2d at 1277.  And if Congress had

10    intended to limit setoff and "make such a major change from the common law, . . . some indication of

11    that intent [should be reflected] in the statute itself."  *Id.*

12         The Ninth Circuit expressly recognized that a creditor's setoff rights are unaffected by the

13    Bankruptcy Code when it held that a creditor's setoff rights survive the discharge under Bankruptcy

14    Code section 1141(d)(1)(A).  *Id.* at 1276–77; *see also In re Davis*, 2012 WL 3205431, at *5 (B.A.P. 9th

15    Cir. Aug. 3, 2012), *aff'd*, 778 F.3d 809 (9th Cir. 2015).  Section 1141(d)(1)(A) provides that

16    confirmation of a chapter 11 plan "discharges the debtor from any debt that arose before the date of . . .

17    confirmation . . . whether or not (i) a proof of the claim based on such debt is filed . . . [or] (ii) such

18    claims is allowed under section 502 of this title . . . ."  If interpreted pursuant to the text of section

19    1141(d)(1)(A), then the discharge under a chapter 11 plan would preclude any creditor from setting off

20    any "debt" against the debtor after confirmation.  The Ninth Circuit rejected such an interpretation of

21    Bankruptcy Code sections 553 and 1141, relying largely on the "long-standing presumption" that a

22    creditor's setoff rights, if allowed under non-bankruptcy law, are preserved in a bankruptcy case.

23         Consistent with Ninth Circuit precedent, a "clear majority" of courts have held that a creditor is

24    not required to timely file a proof of claim in order to preserve its setoff rights.  *E.g.*, *In re M. Silverman*

25    *Laces, Inc.*, 404 B.R. 345, 365 (Bankr. S.D.N.Y. 2009) ("The clear majority and better view . . . is that

26    filing a proof of claim is not a prerequisite to asserting an otherwise valid setoff."); *Columbia Hosp. for*

-14-     MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
                CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11   Doc 801   Filed 09/08/17

1     *Women Med. Ctr., Inc. v. NCRIC, Inc. (In re Columbia Hosp. for Women Med. Ctr., Inc.)*, 461 B.R. 648,

2     672–73 (Bankr. D.C. 2011) ("Although failure to file a proof of claim may preclude NCRIC from

3     asserting any right to distribution under the plan, it does not bar NCRIC from asserting a right of setoff

4     defensively in a turnover proceeding."); *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1539

5     (10th Cir. 1990).[9]  Although it does not appear that the Ninth Circuit has addressed this issue in a

6     published opinion, the Bankruptcy Appellate Panel for the Ninth Circuit cited the Tenth Circuit's

7     decision in *Davidovich* regarding setoff with approval.  *In re Davis*, 2012 WL 3205431 at *5.  Based on

8     the above precedent, Machine Zone's right to use the claims in the Third Amended Complaint for

9     purposes of setoff are unaffected by any decision by this Court with respect to whether the Second

10     Amended Claim relates back.

11          The Debtor attempts to avoid this conclusion by relying on a 15-year old bankruptcy court

12     decision that has not *once* been cited with approval for the position the Debtor advocates.  *In re Aureal,*

13     *Inc.*, 279 B.R. at 579–80.[10]  In *Aureal*, a creditor (Magic) filed a proof of claim for the first time

14     approximately one year after the bar date, and the bankruptcy court entered an order disallowing the

15     claim as untimely.  *Id.*at 575.  Later, in connection with an adversary proceeding commenced by the

16     debtor (Aureal) against Magic, Aureal argued that Magic could not assert any claim for setoff in the

17     litigation because the court had previously disallowed Magic's proof of claim.  The bankruptcy court

18     precluded Magic from setting off its previously disallowed claims in the litigation.

19          The bankruptcy court in *Aureal* distinguished *Davidovich* on the ground that the creditor seeking

20     to assert a setoff right had failed entirely to file proof of claim.  In *Aureal*, Magic had filed a late proof

21

---

22   [9]  This rule applied in bankruptcy is consistent with state law.  Under California law, which governs the
claims asserted between Machine Zone and Peak, even if a claim is barred by a statute of limitations,
23   that claim, by statute, may be used for setoff purposes.  Cal. Civ. Proc. Code § 431.70.

24   [10]  The one secondary source that addresses *Aureal* states critically, "[t]he bankruptcy judge did not view
this apparently as one of those occasions where applying the section as written would create absurdity
25   requiring the court to apply what Congress intended, instead of what it said."  *In re Aureal, Inc. (Aureal,*
*Inc. v. I/O Magic Corp.)*, 2002-JUN NAAG Bankr. Bull. 17 (National Association of Attorneys General:
26   Bankruptcy Bulletin June 2002).

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1 of claim, which was then disallowed by subsequent order. The bankruptcy court did not even attempt to

2 explain why it mattered whether the creditor had no allowed claim because it failed to file a claim or no

3 allowed claim because it filed its claim late. As recognized by the Ninth Circuit, several circuit courts

4 have expressly held that "a claim filed late is tantamount to not filing a claim at all . . . ." *HSBC Bank*

5 *USA, N.A. v. Blendheim (In re Blendheim)*, 803 F.3d 477, 490 (9th Cir. 2015) (citing *Hamlett v. Amsouth*

6 *Bank (In re Hamlett)*, 322 F.3d 342, 349 (4th Cir. 2003). *See also In re Shelton*, 735 F.3d 747, 750

7 (8th Cir. 2013); *In re Tarnow*, 749 F.2d 464, 467 (7th Cir. 1984)). As a result, the bankruptcy court in

8 *Aureal* reached its conclusion based on distinguishing facts that are not legally significant.

9       Moreover, the bankruptcy court's interpretation of section 553(a) is inconsistent with Ninth

10 Circuit precedent regarding the scope and purpose of that statute. The court's decision in *Aureal* is

11 based largely on the text of section 553(a), which provides that "this title does not affect any right of a

12 creditor to offset a mutual debt . . . except to the extent that . . . the claim of such creditor against the

13 debtor is disallowed . . . ." 11 U.S.C. § 553(a); *see also In re Aureal, Inc.*, 279 B.R. at 579. The Ninth

14 Circuit has uniformly interpreted section 553 as "allow[ing] setoffs in bankruptcy to the same extent

15 they are allowed under state law." *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d at 1277. In the

16 absence of clear Congressional intent, there is a "presumption" in favor of enforcing a creditor's setoff

17 rights, and that presumption cannot be unwound by another provision of the Bankruptcy Code. *Id.*

18       Section 502(b)(9), which provides that a claim should be disallowed if "proof of such claim is

19 not timely filed," was added to the Bankruptcy Code in 1994, after the applicable language of section

20 553(a) was included in the Bankruptcy Code. However, the Bankruptcy Code has always required the

21 timely filing of a proof of claim in order to assert an allowed claim for distribution purposes. *Pioneer*

22 *Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 383 (1993) ("Under § 1111 of the Bankruptcy Code . . .

23 and Bankruptcy Rule 3003(c)(2), all such creditors are required to file a proof of claim with the

24 bankruptcy court before the deadline, or 'bar date,' established by the court."). If Congress intended to

25 limit a creditor's setoff rights, through the addition of section 502(b)(9) or otherwise, such intent would

26

MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

1  be reflected in the legislative history. *In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d at 1277. No such

2  intent is suggested in the legislative history for section 502(b)(9).[11]

3      The bankruptcy court in *Aureal* acknowledged that it made "more sense as an equitable matter"

4  for Magic's setoff rights to be preserved, notwithstanding the prior disallowance of its proof of claim on

5  timeliness grounds. *In re Aureal, Inc.*, 279 B.R. at 579. This is correct. This result is also required

6  under Ninth Circuit precedent, and is supported by the "clear majority" approach.[12]

7      **C.     Machine Zone's Recoupment Rights Are Unaffected By The Claim Objection.**

8      Even if the Court were to ignore Ninth Circuit precedent and follow *Aureal's* erroneous

9  conclusion and even if this Court found that Machine Zone's claims do not relate back, Machine Zone

10  would retain the right to assert the claims in the Third Amended Complaint as a defense against Peak's

11  claims, under the doctrine of recoupment. *In re Aureal, Inc.*, 279 B.R. at 580 n.3. Machine Zone has

12  asserted a right to recoupment in each Proof of Claim filed in this case. Original Claim, ¶ 9; Amended

13  Claim, ¶ 10; Second Amended Claim, ¶ 12. *Aureal* stated that an untimely proof of claim could be

14  recouped against claims asserted by the debtor.

15      The doctrine of recoupment applies where the "claims or rights giving rise to [the creditor's right

16  of] recoupment" and the debtor's claims giving "rise to [the creditor's] liability" "arise from the same

17  transaction." *In re TLC Hosps., Inc.*, 224 F.3d 1008, 1011 (9th Cir. 2000). The Ninth Circuit's test for

18  whether a claim arises from the "same transaction" mirrors the standard under FRCP 13(a) for

19  compulsory counterclaims. *See In re Madigan*, 270 B.R. 749, 755 (B.A.P. 9th Cir. 2001). Under that

20  approach, a "transaction" "is given a liberal and flexible construction" and thus may involve "'a series

21  of many occurrences'" that share a "'logical relationship.'" *Id.* (quoting *Moore v. N.Y. Cotton Exch.*,

22

23  [11]  140 Cong. Rec. H10752-01, 1994 WL 545773 (Oct. 4, 1994) ("The amendment to section 502(b) is designed to overrule *In re Hausladen*, 146 B.R. 557 (Bankr. D. Minn. 1992), and its progeny by

24  disallowing claims that are not timely filed. . . ."). The court in *Hausladen* held that late-filed claims in chapter 13 cases do not have to be disallowed.

25  [12]  Relying on prior Ninth Circuit precedent, an unpublished 1994 Ninth Circuit decision rejected the conclusion reached by the court in *Aureal*. *Triple B. Farms v. Haney Seed Co.*, 1994 WL 463615 (9th

26  Cir. Aug. 26, 1994). Pursuant to Ninth Circuit Rule 36-3, unpublished cases are "not precedent."

-17-    MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

1  270 U.S. 593, 610 (1926)).  As a result, "[t]he crucial factor in determining whether two [claims] are

2  part of the same transaction . . . is whether there 'is [a] "logical relationship" between the two.'"  *In re*

3  *Petersen*, 437 B.R. 858, 872 (D. Ariz. 2010) (quoting *TLC Hosps.*, 224 F.3d at 1012).

4  Although "[r]ecoupment often arises in contract cases, it is not limited to contractual

5  obligations," *id.*, nor does a logical relationship turn on the "similarity [or difference] between the

6  [claims'] legal theories," *Grumman Sys. Support Corp. v. Data Gen. Corp.*, 125 F.R.D. 160, 162 (N.D.

7  Cal. 1988).  Courts have held that nexus is met where "the claims arise out of the same aggregate set of

8  operative facts," *In re Madigan*, 270 B.R. at 755 (quoting *In re Pinkstaff*, 974 F.2d 113, 115 (9th Cir.

9  1992)), or "involve many of the same factual or legal issues," *see Nehrlich v. JLW-TW Corp.*, 2016 WL

10  127584, at *4 (S.D. Cal. Jan. 11, 2016).  As "the facts relied upon by [a] plaintiff rarely, if ever, are, in

11  all particulars, the same as those constituting [a] defendant's counterclaim," that set of facts need not be

12  "identical."  *In re Madigan*, 270 B.R. at 755.  It is enough that the facts underlying both claims "[are]

13  inextricably intertwined."  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249–51 (9th Cir.

14  1987); *Horton v. Calvary Portfolio Servs., LLC*, 301 F.R.D. 547, 551 (S.D. Cal. 2014) (finding "clear

15  logical relationship" between claims for breach of contract and unlawful conduct where "the facts

16  concerning" the "failure to pay [the contractual] debt" and the "alleged wrongful acts" to "recover" that

17  debt "overlap significantly").

18  The Debtor's alleged claims against Machine Zone in the Peak Second Amended Complaint and

19  Machine Zone's claims in the Third Amended Complaint arise out of the same transaction and "same

20  aggregate set of operative facts."  Peak's Second Amended Complaint relies, in part, on the business and

21  contractual relationship starting from the parties' discussions in "October 2013" through the "series of

22  contracts" entered into "beginning in early 2014" and ending in 2015.  Peak Second Amended

23  Complaint, ¶¶ 2, 21.  Peak alleges, among other things, that Peak's purported "proprietary network

24  architecture" that was "designed to provide Peak's clients with the fastest and most reliable network

25  system" was "the core reason for Machine Zone selecting Peak Hosting in February 2014 as its service

26  provider."  *Id. ¶* 30.  These allegations place at issue and are "inextricably intertwined" with Machine

-18-  MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1  Zone's own allegations in the Third Amended Complaint regarding why Machine Zone "select[ed] Peak

2  Hosting in February 2014 as its service provider"—that is, Peak's fraudulent claims about its

3  capabilities, resources, and financial stability.

4      Peak also alleges that, throughout their entire business relationship, Machine Zone

5  "fraudulent[ly] misrepresent[ed]" that it would use Peak for its data needs in the future, yet privately

6  "always intended" to "wrongfully terminate" those services after it acquired Peak's trade secrets.  *Id.* at

7  ¶¶ 125–26.  The thrust of Machine Zone's allegations that are subject to the Claim Objection—*i.e.*, that

8  throughout the entire business relationship (including in 2013 and 2014), Peak fraudulently misled

9  Machine Zone about or concealed the nature of Peak's services and business—provides an "alternative

10  basis" to explain Machine Zone's actions.  *Klein v. London Star Ltd.*, 26 F. Supp. 2d 689, 697 (S.D.N.Y.

11  1998) (employer's claim that employee stole trade secrets logically related as an affirmative defense to

12  employee's claim of constructive discharge based on his age); *see In re B & L Oil Co.*, 782 F.2d 155,

13  158 (10th Cir. 1986) (claims are "closely intertwined" where counterclaim works as "essentially a

14  defense"); *see also Religious Tech. Ctr. v. Scott*, 82 F.3d 423 (9th Cir. 1996) (table) (claims are

15  "logically connected" where "resolution of the first claim" would work to "moot" the other claim).  And

16  as the question of "whether [Peak] fraudulently procured" Machine Zone's business "affects" whether

17  Machine Zone wrongfully terminated Peak's services, the "'facts necessary' to prove" those claims

18  "substantially overlap."  *Mophie, Inc. v. ABM Wireless, Inc.*, 2015 WL 12791373, at *3 (C.D. Cal. Sept.

19  3, 2015) (quoting *Pochiro*, 827 F.2d at 1251) (claim of unfair competition based on fraudulently

20  procured trademark logically related to trademark enforcement action).

21      In sum, even under *Aureal*, Machine Zone would have valid recoupment rights even if the

22  Second Amended Claim did not relate back.

23  **D.**    **Machine Zone Can Prove Peak's Fraud to Defend Against Peak's Claims.**

24      Even if some portion of Machine Zone's money damage claim against Peak somehow did not

25  relate back,  Machine Zone would have the right to prove the very same facts as a complete defense to

26  any claims Peak could otherwise have against Machine Zone.  More specifically, Peak cannot enforce

-19-        MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
            CLAIM AND ORDER AND NOTICE THEREON

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

Case 16-32311-pcm11    Doc 801    Filed 09/08/17

1  the 2015 MSA against Machine Zone because Peak obtained Machine Zone's agreement to the 2015

2  MSA through fraud, concealment of critical facts, negligent misrepresentations, and unfair trade

3  practices. *See* Cal. Civ. Code § 1567 ("An apparent consent is not real or free when obtained

4  through . . . fraud"); *Grady v. Easley*, 45 Cal. App. 2d 632, 642 (1941) ("One who has been induced to

5  enter into a contract by false and fraudulent representations . . . may set up such damages as a complete

6  or partial defense if sued on the contract by the other party.").

7      Moreover, even if some of Machine Zone's claims are disallowed against Peak, this would have

8  no effect on the resources required in the Machine Zone Litigation and would create no efficiencies in

9  the Superior Court. Machine Zone's fraud claims against Peak are also asserted against Papen.

10      **E.      The Plan Requires Preservation of Machine Zone's Setoff Rights.**

11      For the reasons stated above, Machine Zone's setoff rights, recoupment rights and right to assert

12  Peak's misconduct as a defense will not be altered by any ruling on the Claim Objection. This Court

13  could, therefore, determine to follow the approach adopted in the Debtor's Plan and the automatic stay

14  stipulation [D.I. 268]—allow the Superior Court to adjudicate the Machine Zone Litigation.[13] If the

15  Superior Court awards Machine Zone a net claim, this Court will decide what distribution that claim will

16  receive under the Plan. If the Superior Court awards a net judgment to Peak, then Peak can seek to

17  enforce that judgment against Machine Zone and Machine Zone will have no allowed claim.

18  **IV.  CONCLUSION**

19      For the reasons set forth herein, Machine Zone respectfully requests that the Court deny the

20  Claim Objection in its entirety.

21

22

23  ---

    [13]  The Peak Web Litigation Trust Agreement [D.I. 634] (the "**Litigation Trust Agreement**") provides,

24  "[t]he Litigation entitled Machine Zone, Inc. v. Peak Web LLC, Santa Clara County Superior Court
    Case No. 1-15-cv-288498 is not a Litigation Trust Asset, *but all such rights of plaintiff therein to offset*

25  *any claims it may have are preserved*." Litigation Trust Agreement, § 2.4.2 (emphasis added). The
    Litigation Trust Agreement was drafted by the Debtor, and binds the Litigation Trustee. The Debtor is

26  seeking to limit Machine Zone's setoff rights through the Claim Objection. Such relief contradicts the
    Litigation Trust Agreement, and the Court should not permit the Debtor to ignore its own agreement.

**Perkins Coie LLP**
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
Phone: 503.727.2000
Fax: 503.727.2222

| | | |
|---|---|---|
| 1 | DATED: September 8, 2017 | **PERKINS COIE LLP** |
| 2 | | By: */s/ Douglas R. Pahl* |
| 3 | | Douglas R. Pahl, OSB No. 950476<br>DPahl@perkinscoie.com |
| 4 | | 1120 N.W. Couch Street, 10th Floor<br>Portland, OR 97209-4128 |
| 5 | | Telephone: 503.727.2000<br>Facsimile: 503.727.2222 |
| 6 | | Michael L. Bernstein<br>Admitted *pro hac vice* |
| 7 | | Michael.Bernstein@aporter.com<br>Arnold & Porter Kaye Scholer LLP |
| 8 | | 601 Massachusetts Ave., NW<br>Washington, DC 20001-3743 |
| 9 | | Telephone: 202.942.5577<br>Facsimile: 202.942.5999 |
| 10 | | |
| 11 | | Jeffrey C. Krause (Admitted *pro hac vice)*<br>jkrause@gibsondunn.com |
| 12 | | GIBSON, DUNN & CRUTCHER LLP<br>333 S. Grand Ave. |
| 13 | | Los Angeles, CA 90071-3197<br>Telephone: 213.229.7995 |
| 14 | | Facsimile: 213.229.6995<br>Attorneys for Machine Zone, Inc. |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |

-21-  MACHINE ZONE, INC.'S RESPONSE TO OBJECTION TO
CLAIM AND ORDER AND NOTICE THEREON

**CERTIFICATE OF SERVICE**

I hereby certify that on the date set for the below I electronically filed the foregoing MACHINE ZONE'S RESPONSE TO OBJECTION TO CLAIM AND ORDER AND NOTICE THEREON with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants

DATED this 8th day of September, 2017

PERKINS COIE LLP

*/s/Douglas R. Pahl*
Douglas R. Pahl, OSB No. 950476

Attorneys for Machine Zone, Inc.

PAGE 1    CERTIFICATE OF SERVICE