Below is an Opinion of the Court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | |
| ) | Bankruptcy Case No. |
| PEAK WEB LLC, ) | 16-32311-pcm11 |
| ) | |
| ) | MEMORANDUM OPINION RE OBJECTION |
| Debtor. ) | TO CLAIM #48 |

Debtor Peak Web LLC objects to the amended claim of Machine Zone, Inc., filed after the claims bar date, seeking disallowance of the amended claim as untimely. For the reasons set out below, the objection will be sustained in part and overruled in part.

PROCEDURAL BACKGROUND

Before debtor filed chapter 11 bankruptcy in 2016, the parties had filed complaints against each other in California state court for claims arising out of a contractual relationship under which debtor was to provide web hosting services to support Machine Zone's online gaming business. Before the claims bar date, Machine Zone filed a proof of claim for "at least" $23,000,000 plus an unspecified amount of punitive damages. The claim was based on the complaint Machine Zone had filed

Page 1 -   MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

prepetition against debtor in state court.

Debtor objected to the original claim on its merits. This court abated action on that objection and granted relief from stay for the parties to litigate the merits of the claims in state court.

After the October 13, 2016, claims bar date, Machine Zone filed an amended claim for "at least" $247,176,000, made up of $47,176,000 in compensatory and consequential damages and no less than $200,000,000 in punitive damages. The amended claim was based on a First Amended Complaint filed in the state court litigation. Debtor objects to the amended claim on its merits, but also argues that the amended claim should be disallowed because it is untimely and does not relate back to the original proof of claim. This court ruled that it will not abate the objection to the amended proof of claim to the extent the issue is whether the amended claim is timely.

Because Machine Zone had filed a Third Amended Complaint in state court, it filed a Second Amended Claim in this case. The Second Amended Claim did not change the amount of the claim from that set out in the First Amended Claim. Debtor filed an Amended Objection to the Second Amended Claim (Doc. #882), which reasserts and adopts the objection to the First Amended Claim. Because the objection has been fully briefed and the issues raised in the amended objection are the same as those raised in the objection to the First Amended Claim, this court will proceed with resolving the timeliness of the Second Amended Claim on the same schedule as applied to the objection to the First Amended Claim.

LEGAL STANDARD

A claim that is not timely will be disallowed. 11 U.S.C. § 502(b)(9). The court has discretion whether to allow an amendment to a timely filed claim. In re Grivas, 123 B.R. 876 (Bankr. S.D. Cal. 1991). The question in determining whether to allow an amendment to a timely proof of claim is whether the amendment relates back to the timely filed claim, or whether it is instead "a new claim styled as an amendment." Id. at 878.

The rule "in the Ninth Circuit [is] that an amendment to a timely proof of claim 'relates back' to a timely filed claim when the original claim provided 'fair notice of the conduct, transaction, or occurrence that forms the basis of the claim asserted in the amendment.'" In re Jackson, 541 B.R. 887, 891 (9th Cir. BAP 2015) (citation omitted). The courts analogize to Fed. R. Civ. P. 15(c), the federal civil procedure rule governing relation back of amendments to pleadings. See In re Solari, 63 B.R. 115, 117 (9th Cir. BAP 1986); In re Westgate-California Corp., 621 F.2d 983 (9th Cir. 1980). That rule provides that an amended pleading relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out – in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).

> "In determining whether an amended cause of action is to relate back, the emphasis is not on the legal theory of the action, but whether the specified conduct of the defendant, upon which the plaintiff is relying to enforce his amended claim, is identifiable with the original claim." Where an amended pleading seeks only to add new claims to an original pleading, "the . . . court should . . . analyze the two pleadings to determine whether they share a common core of operative facts sufficient to impart fair notice of the transaction, occurrence, or conduct called into question."

Page 3 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

*Federal Deposit Ins. Corp. v. Jackson*, 133 F.3d 694, 702 (9th Cir. 1998) (internal citations and quotations omitted).

> Amendments are freely allowed for curing defects in the original claim, providing greater detail to a previously-filed claim, or pleading a new theory on previously-filed facts. However, post bar-date amendments must be scrutinized to avoid approval of a new claim styled as an amendment.

*Grivas*, 123 B.R. at 878 (citation omitted).

Thus, "amendments that do no more than restate the original claim with greater particularity or amplify the details of the transaction alleged in the" original claim will relate back. 6A Wright, Miller and Kane, *Federal Practice and Procedure* § 1497 (2010). But where the change is so great that defendant was not given adequate notice of the conduct, transaction, or occurrence that forms the basis of the new claim, the amendment will not relate back. *Id.* In deciding whether the claim gave adequate notice, the court looks at whether the amended claim will likely be proved by the same kind of evidence as would support proof of the original claim. *In re Dominguez*, 51 F.3d 1502, 1510 (9th Cir. 1995). In other words, could the evidence supporting the second set of allegations have been introduced to prove the original claim? See *In re Dean*, 11 B.R. 542, 545 (9th Cir. BAP 1981), aff'd, 687 F.2d 307 (9th Cir. 1982). It does not matter if the theory of recovery is different; "[i]t is the operative facts that control the question of relation back, not the theory of liability applied to those facts." *In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 88 (Bankr. N.D. Cal. 2004). Amendments that allege facts that "differ in both time and type from those the original pleading set forth" do not relate back. *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Where the claims relate to fraud, the question is "whether the fraud

Page 4 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

alleged in the [amended claim] is the same as the fraud alleged in the [original claim]." <u>In re Markus</u>, 313 F.3d 1146, 1150 (9th Cir. 2002).

DISCUSSION

1. <u>Original claim</u>

The original state court complaint, on which the original proof of claim was based, set out claims relating to a 2015 Master Service Agreement, Service Level Agreement and associated Service Orders (collectively "MSA") for breach of contract, declaration of the right to terminate the 2015 MSA, breach of the covenant of good faith and fair dealing, promissory estoppel, rescission of the 2015 MSA based on fraudulent inducement, and negligent misrepresentation. Because debtor's timeliness objection relates solely to the fraud-based claims, I will limit my discussion to the claims for fraudulent inducement and negligent misrepresentation.

   A. <u>Fraudulent Inducement</u>

Machine Zone alleged that, during discussions beginning in January 2015, debtor represented that, with limited exceptions, it operated industry standard best practices for Tier IV data centers (which requires full redundancy of systems and equipment and necessary infrastructure) and that it was capable of providing 100% network connectivity. It alleged that, in February 2015, debtor made fraudulent representations to induce Machine Zone to enter into the 2015 MSA, including that (1) it was capable of providing the level of service required by Machine Zone; (2) it operated at industry standard best practices for Tier IV data centers; (3) its hosted environment would never go down; (4) it could provide full monitoring and remote access; (5) it had high quality personnel; (5) in

Page 5 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

response to an audit performed by Machine Zone before these contract negotiations began, it had made improvements and was operating at a Tier IV data center level; and (6) debtor was able to provide the required services "from a hardware, infrastructure, personnel, processes and operational perspective." Complaint at ¶ 54. It also alleged that debtor concealed that its data centers failed to conform to industry standard practices "in many, many regards[.]" Id. at ¶ 55.

In reliance on those representations, which Machine Zone alleged were false and that debtor knew were false, Machine Zone entered into the 2015 MSA and paid debtor $23,000,000. It sought rescission of the agreement, seeking return of the $23,000,000 paid to debtor plus consequential damages.

### B. Negligent Misrepresentation

In this claim, Machine Zone alleged that debtor represented that it had unique knowledge and expertise regarding its ability to provide uninterrupted web hosting services to Machine Zone for its games. In the 2015 MSA, debtor represented that debtor could and would provide continuous service at Tier IV performance levels. Debtor knew or should have known that Machine Zone would rely on debtor's representations about its ability to provide those services and intended Machine Zone to rely on them. It knew that the information was not true. Machine Zone reasonably relied on debtor's assurances and suffered financial loss as a result of debtor's failure to provide the promised level of service.

## 2. Amended Claim

The TAC on which the Second Amended Claim is based vastly expands the allegations of misconduct. It alleges for the first time that the

Page 6 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

parties had, before they entered into the 2015 MSA, entered into a 2014 MSA. It again alleged claims for breach of the 2015 MSA, declaratory relief of the right to terminate that MSA, and breach of the covenant of good faith and fair dealing with regard to the 2015 MSA. The claims that are the subject of the timeliness objection are the claims based on fraud: (1) fraudulent inducement and rescission relating to the 2015 MSA; (2) fraudulent concealment as to the 2014 MSA; (3) fraudulent concealment as to the 2015 MSA; (4) negligent misrepresentation; (5) false advertising; and (6) unfair competition.

A. <u>Fraudulent inducement - 2015 MSA</u>

In this claim, Machine Zone alleges that debtor made intentional misrepresentations in 2014 following a September 2014 outage that it was doing everything it could to prevent such an outage from happening again, and that it would hire additional experienced personnel to remedy the service issues and furnish the level of service Machine Zone required. It represented in May 2015 that its test and live game environments were separate. Machine Zone alleges that those representations were false.

It also alleges that, in early 2015, during negotiation of the 2015 MSA, debtor intentionally concealed and failed to disclose material facts. These included partial disclosures relating to the September 2014 service outage, which debtor represented was an aberration, debtor's representation that it was doing everything it could to correct the issues that led to the 2014 outage, and financial information provided to Machine Zone in February 2015. Machine Zone alleges that debtor concealed that it had suffered numerous service outages for other customers in 2013 and 2014, it did not have the safety equipment in place

Page 7 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

that it represented it did, it was depriving itself of the financial resources needed to fix its problems by paying millions of dollars in distributions to debtor's owners, and it removed information about its financial weakness from the 2015 financial information provided to Machine Zone.

It also alleges that debtor actively concealed information that it had a duty to disclose, including a February 2014 service outage to other customers and the financial information removed from the 2015 financial spreadsheet provided to Machine Zone.

Machine Zone alleges that debtor knew that all of these partial disclosures and concealments were false and were material to Machine Zone. Machine Zone continued to rely on representations debtor made before the 2014 MSA, and debtor made the misrepresentations and continued to conceal material information in order to induce Machine Zone into entering into the 2015 MSA. The "false and misleading statements to Machine Zone gave Machine Zone the false impression that Peak was a stable, sophisticated, and experienced data hosting business that had the technology, manpower, and financial wherewithal to prevent Machine Zone from suffering downtime." TAC at ¶ 133.

Machine Zone alleged harm from debtor's failure to provide the agreed-upon services, seeking restoration of the $26,651,000 paid to debtor under the 2015 MSA plus consequential damages.

B. <u>Fraudulent Concealment - 2014 MSA</u>

In this claim, Machine Zone alleges that, before and during the 2014 MSA, debtor concealed the service outages it had experienced with other customers and that it did not have the ability to meet its contractual

Page 8 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

obligations.  It also concealed that it had distributed millions of dollars to its owners during the term of the 2014 MSA.

    C.    <u>Fraudulent Concealment - 2015 MSA</u>

Machine Zone alleges that debtor fraudulently concealed material facts from it in order to induce Machine Zone into entering into the 2015 MSA.  Instances of concealment include debtor's failure to disclose, during negotiation of the 2015 MSA, that it had suffered service outages with other customers in the past, its failure to disclose that outages experienced by Machine Zone during the 2015 MSA were a result of lack of adequate qualified staff, and that debtor did not have the financial resources to provide the required level of service, caused at least in part by debtor's distribution to its owners of millions of dollars up to and during the term of the 2015 MSA.  It alleges that it was harmed by entering into the 2015 MSA.

    D.    <u>Negligent Misrepresentation</u>

Machine Zone alleges that, before and during the course of the 2014 MSA, and before and during the course of the 2015 MSA, debtor represented that it was capable of providing uninterrupted web hosting services, but it did not have the financial resources, qualified personnel, and system capability to do that.  Debtor did not have reasonable grounds for believing that the information it provided to Machine Zone regarding its ability to perform was correct.

    E.    <u>False Advertising</u>

In this claim, Machine Zone alleges that various advertising materials contained false information that was likely to mislead the public.  The allegations claim that information contained in a marketing

Page 9 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

deck sent to Machine Zone in December 2013 contained false information about debtor's ability to provide web hosting that would never go down, and that it had successfully provided services to dozens of other businesses. It made representations in an October 2013 email regarding its abilities to provide 100% uptime.

During negotiations of the 2014 and 2015 MSAs, debtor knew or should have known that the claims of redundant architecture, customers that trusted debtor, and its ability to provide continuous uptime were false or likely to mislead. It then alleges that the advertisements did in fact mislead, and that Machine Zone relied on those advertisements in deciding to enter into the 2014 and 2015 MSAs.

    F.   Unfair Competition

In this claim, Machine Zone again alleges that debtor represented that it had the capability to provide 100% service uptime and that it had other customers that trusted debtor, which led Machine Zone to enter into the 2015 MSA. Debtor intentionally concealed from Machine Zone its past service failures with other customers, that it did not have the technology to support 100% uptime, that it did not have the human resources to support Machine Zone, and that it was in a precarious financial position. This concealment, Machine Zone alleges, constitutes an unfair business practice that caused Machine Zone harm.

3.   Analysis

Machine Zone argues that I need not decide whether any of its claims set out in the TAC should be disallowed as time-barred, because the claims could be used as recoupment or setoff even if disallowed, and the facts alleged may relate to its defense to debtor's claims against

Page 10 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

Machine Zone. I need not and will not decide whether disallowed claims can properly be used as recoupment or setoff or whether evidence supporting the allegations in the TAC would be relevant to Machine Zone's defense to debtor's claims. The question I am deciding in this claim objection is whether the fraud-based claims alleged in the TAC can be pursued as affirmative claims for relief against debtor. Use of claims as setoffs, recoupment, or defenses is beyond the scope of this claim objection.

In deciding whether the amended claim, as set out in the TAC, relates back to the original claim and is therefore timely, I need to compare the original claim to the amended claim, and determine whether the amended claim arises out of the same conduct, transaction, or occurrence as the original claim.

The facts set out in the original complaint related solely to debtor's conduct during the negotiation of and after entry into the 2015 MSA. Those misrepresentations were alleged to have occurred in 2015, except for representations made in response to a 2014 audit that debtor was making improvements and was operating at a Tier IV data center level. Thus, the conduct, transaction, or occurrence that was the subject of the timely claim was debtor's conduct in late 2014 and 2015 leading to entry of the 2015 MSA and thereafter, relating to its capability "from a hardware, infrastructure, personnel, processes and operational perspective" to provide the high level of service Machine Zone required. Complaint at ¶ 54.

Debtor argues that the original complaint, which supported the original proof of claim, was based "solely on Peak's alleged

Page 11 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

misrepresentations--all made during the negotiations of the 2015 Master Services Agreements ("2015 MSA")--about its technical capabilities to provide MZ uninterrupted data hosting service for its Game of War product." Peak's Response re Objection to Claim at 7. Because the TAC, on which the Second Amended Proof of Claim is based, "disclaims" any reliance on debtor's ability to provide 100% uptime, TAC at ¶ 7, it argues that Machine Zone's expanded allegations of fraud cannot arise out of the same conduct, transaction, or occurrence as the original claim.

Machine Zone, on the other hand, argues that the "transaction" alleged in the original complaint was the 2015 MSA, therefore anything debtor is alleged to have done or not done during the parties' entire relationship that Machine Zone can allege ultimately led to the 2015 MSA is part of that same transaction and relates back.

I conclude that neither party is correct. Contrary to debtor's argument, the original complaint alleged fraud based on more than simply debtor's inability to supply 100% uptime. Machine Zone alleged, for example, that debtor represented it could provide the required level of service "from a hardware, infrastructure, personnel, processes and operational perspective." Complaint at ¶ 54. Those representations go beyond representing that debtor could provide 100% uptime.

Machine Zone's argument applies too broad a level of generality. The mere fact that a timely claim is based on a particular transaction does not open the door to allegations of facts that, while arguably related to the transaction, are not related in type and time to the original conduct complained of. The Supreme Court rejected such a broad approach to relation back in Mayle v. Felix, 545 U.S. 644 (2005). In

that case, the court considered relation back in the context of a petition for a writ of habeas corpus. A petition for habeas corpus challenging a criminal conviction must plead specific grounds for relief and the facts supporting each ground. 545 U.S. at 648. The Court applied the Fed. R. Civ. P. 15 standard for relation back to an amended petition and concluded that the Ninth Circuit's expansive reading of "conduct, transaction, or occurrence" to allow relation back so long as the amended petition stemmed from the same trial, conviction, or sentence as set out in the timely claim was too broad. Instead, the Court said, "relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." 545 U.S. at 659. This approach, the Court said, is "consistent with the general application" of the Rule 15 relation back provision in civil cases. Id. at 664.

The relation back rule strikes a balance between two "competing concerns": the idea that amendments to pleadings should be liberally applied to allow the decision of claims on their merits and the purpose of statutes of limitations to protect defendants from stale claims. ASARCO, LLC v. Union Pacific R. Co., 765 F.3d 999, 1005 (9th Cir. 2014). "[N]otice is an essential element in the relation back determination." Id. at 1006. Relation back is allowed if the facts alleged arise from the "common core of operative facts" set out in the original pleading, such that the defendant is on notice that its conduct with regard to those facts is at issue.

I will discuss each fraud claim alleged in the TAC in turn, focusing on the operative facts pled in the original complaint and whether the

Page 13 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

amended claims are based on a common core of operative facts such that debtor had fair notice that its conduct with regard to those facts could be called into question.

### A. Fraudulent Inducement - 2015 MSA

As pled in the TAC, this claim alleges both intentional misrepresentations and intentional omissions of key facts, including partial disclosures and active concealment of certain facts.

#### i. Intentional Misrepresentations

Although this claim alleges many facts that pre-date the 2015 MSA contract negotiation, the actual misrepresentations alleged, on which Machine Zone relies for affirmative relief against debtor, are alleged to have occurred in 2015, with the exception of the representations in response to the 2014 audit about debtor's work to make improvements to improve service. The alleged representations arise from the same core of operative facts alleged in the original complaint, which was representations during the negotiations leading up to the 2015 MSA relating to debtor's ability to provide 100% uptime from the perspective of hardware, infrastructure, personnel, processes and operations.

The allegation of debtor's representations about its improvement of operations in response to the 2014 audit relates to the original allegation about debtor's response to the earlier audit.

Debtor was on notice from the original complaint that its conduct in relation to the negotiation of the 2015 MSA was at issue. The expanded allegations in the TAC relate both in type and time to the original complaint. Therefore I conclude that those instances of alleged misrepresentations relate back to the original complaint and are not

barred.

### ii. Intentional Omission of Key Facts

Whether the allegations of omission of facts and active concealment relate back is a closer question.

The partial disclosures debtor is alleged to have made to Machine Zone after a September 2014 outage of the cause for the outage and debtor's response to it relate in both time and type to the allegation in the original complaint about debtor's representations in response to the September 2014 audit. Therefore, the claim is not barred to the extent it is based on those allegations.

The alleged partial disclosure in February 2015 regarding debtor's financial information also relates to the 2015 contract negotiations and debtor's alleged conduct in inducing Machine Zone to enter into the 2015 MSA, and is not barred.

Machine Zone alleges two instances of active concealment when debtor had a duty to disclose. First, it alleges that debtor concealed a February 2014 outage debtor caused to other customers. Second, it alleges concealment of first and second quarter 2014 financial information in a 2015 financial disclosure.

I conclude that allegations of active concealment during the time set out in the original complaint - late 2014 into early 2015 - are related to the fraud alleged in the original complaint. Debtor was put on notice by the original complaint that its conduct during that time frame, in connection with working toward the 2015 MSA, was alleged to support a claim for fraud. Therefore, an affirmative claim for relief based on these allegations of concealment relates back and is not time-

barred.[1]

B. <u>Fraudulent Concealment - 2014 MSA</u>

The TAC sets out as Count II a claim for fraudulent concealment relating to the 2014 MSA. The original complaint did not contain any allegations relating to or even mention the 2014 MSA. Machine Zone did not address this claim in its briefing.

At the hearing on this motion, the court asked counsel for Machine Zone whether it was pursuing this claim. Counsel asserted that it is not seeking rescission of the 2014 MSA, but is pursuing Count II only as part of a pattern of fraud related to the 2015 MSA.

All of the facts alleged in this count relate to conduct alleged to have occurred before or during the course of the 2014 MSA. Because those facts do not relate in time to the 2015 MSA, and in fact relate to a contract that was not even mentioned in the original complaint, they do not relate back to the original complaint and are time-barred. Machine Zone cannot pursue any affirmative relief for damages arising out of the conduct alleged in this count.[2] To the extent Machine Zone alleges that

---

[1] The original complaint and the TAC differ in the amount Machine Zone seeks to recover from restoration of the payments made under the 2015 MSA. The original complaint sought recovery of $23,000,000, while the TAC seeks recovery of $26,651,000. To the extent the TAC is simply refining the amount sought by Machine Zone for rescission of the 2015 MSA, the increase in Machine Zone's claim relates back to the original proof of claim.

[2] The state court noted that this claim, as alleged in the Second Amended Complaint (and now repeated in the TAC) does not contain any allegations of damages relating to the 2014 MSA. However, despite the label of the claim as "Fraudulent Concealment - 2014 MSA," the claim alleged "that Machine Zone entered into the 2015 MSA, in addition to the
(continued...)

Page 16 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

this conduct ultimately led to its entry into the 2015 MSA, the facts alleged in this count go well beyond the time and type of fraud alleged in the original complaint and do not relate back.[3]

C. <u>Fraudulent Concealment - 2015 MSA</u>

In this claim, Machine Zone alleges that debtor concealed material facts during its negotiation of the 2015 MSA, including that its other customers had experienced service outages in the past. It also alleges that, during the course of the 2015 MSA, debtor concealed the cause of outages Machine Zone experienced in 2015.

To the extent the TAC alleges that debtor concealed facts during the negotiation and implementation of the 2015 MSA that it had a duty to disclose, the allegations relate in time and type to the original allegations of fraud with regard to the 2015 MSA. Therefore, this claim relates back to the original claim and is not barred.

---

[2](...continued)
2014 MSA, due to the fraudulent omissions alleged in that claim." Order After Hearing at p.16:13-14 (Exh. G). It therefore denied the demurrer because "a demurrer does not lie to a portion of a cause of action." <u>Id.</u> at p.16:17-18.

[3] The TAC seeks compensatory and consequential damages of $47,176,000. The TAC does not specify how Machine Zone arrived at that amount. However, this figure comes close to the sum of the $26,651,000 sought for payments alleged to have been made under the 2015 MSA, and the $20,528,000 Machine Zone alleges that it paid to Peak Web under the 2014 MSA. TAC at ¶ 119, 136. To the extent the amended claim seeks damages for the payments made to Machine Zone under the 2014 MSA, those damages are time-barred. In addition, the original complaint and proof of claim sought punitive damages in an unspecified amount. The TAC's amendment to specify the amount of punitive damages relates back and is not barred, to the extent the punitive damages relate to claims that survive this claim objection.

Page 17 - MEMORANDUM OPINION RE OBJECTION TO CLAIM #48

D. <u>Negligent Misrepresentation</u>

As with the earlier claims, to the extent this claim alleges that debtor misrepresented its capability to provide uninterrupted data hosting services during its negotiation and performance of the 2015 MSA, the facts arise out of the same conduct, transaction, or occurrence as the fraud alleged in the original complaint. Alleged misrepresentations that occurred before the 2014 audit referred to in the original complaint, however, are outside the conduct complained of in the original complaint, and do not relate back.

E. <u>False Advertising and Unfair Competition</u>

These two claims raise new theories for relief that were not alleged in the original complaint. The fact that the amended claim sets out a different theory of recovery is not determinative: "[i]t is the operative facts that control the question of relation back, not the theory of liability applied to those facts." <u>In re Pacific Gas & Elec. Co.</u>, 311 B.R. 84, 88 (Bankr. N.D. Cal. 2004).

Thus, as with the other claims, the question is whether the facts alleged in support of these new theories for relief arise from the same conduct, transaction, or occurrence as the original claim.

The advertising that forms the basis for the false advertising claim is a December 2013 marketing deck and an October 2013 email. Although the TAC alleges that Machine Zone relied on those false advertisements in entering into the 2015 MSA, I conclude that marketing materials provided to Machine Zone in 2013 fall well outside the allegations of misrepresentation alleged in the original complaint. The original claim, based on debtor's conduct in late 2014 and early 2015, did not provide

reasonable notice to debtor that its advertising to Machine Zone back in 2013 was put at issue. This claim does not relate back and will be disallowed.

The unfair competition claim is based more directly on alleged representations and concealments leading to entry into the 2015 MSA. To the extent the allegations relate to representations made in 2015 and active concealment of material information in 2015, this claim relates back to the original complaint.

## CONCLUSION

The claims for fraudulent concealment with regard to the 2014 MSA and the false advertising claim are time-barred. Affirmative claims for relief based on allegations of misrepresentations and concealments that pre-date the late 2014 time period alleged in the original complaint are also time-barred. Debtor's objection to the Second Amended Claim is thus sustained with regard to those claims and specifications of fraud. It is otherwise overruled.

This ruling does not address the merits of the Second Amended Claim, which will be determined in California state court. Further, this ruling limits the affirmative relief Machine Zone may seek from debtor. But it is not intended to limit evidence submitted in support of the surviving claims, to the extent the state court determines that the evidence is relevant. Nor do I express any opinion as to whether claims that are disallowed as time-barred may be used for recoupment or setoff, or whether Machine Zone can defend based on facts alleged in the barred claims.

Counsel for debtor should submit an order consistent with this

Memorandum Opinion.

### 

cc: Douglas R. Pahl
    Timothy J. Conway